NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-5066-14T2

STATE OF NEW JERSEY,

 Plaintiff-Respondent,

v.

JOSEPH WATSON,

 Defendant-Appellant.

___________________________________________

 Argued April 25, 2017 – Decided September 21, 2017

 Before Judges Espinosa and Suter.

 On appeal from Superior Court of New Jersey,
 Law Division, Passaic County, Municipal Appeal
 No. 5048.

 John Vincent Saykanic argued the cause for
 appellant.

 Robert J. Wisse, Assistant Prosecutor, argued
 the cause for respondent (Camelia M. Valdes,
 Passaic County Prosecutor, attorney; Mr.
 Wisse, of counsel and on the brief).

PER CURIAM
 Defendant Joseph Watson was convicted of driving while under

the influence of alcohol (DWI), N.J.S.A. 39:4-50; failure to stop

at a stop sign, N.J.S.A. 39:4-144; and having an open container

in his vehicle, N.J.S.A. 39:4-51(a). In his appeal, he argues all

his convictions should be reversed because his right to a speedy

trial was violated, and he further challenges his DWI conviction.

We affirm.

 I.

 Passaic County Sheriff's Officer Edward Shanley and Dr.

Richard Saperstein, Ph.D., were the only witnesses at the municipal

court trial conducted in April 2008.1 We summarize their testimony

as follows.

 On the evening of November 22, 2007, Officer Shanley observed

a green 2000 Dodge van cross the intersection "at a high rate of

speed," which he estimated to be approximately 30 to 35 miles per

hour in a 25 mile per hour speed limit area.

 Officer Shanley followed the van, losing sight of it for a

few moments, and caught up with the vehicle as it failed to stop

for a red light. He later observed the van make a wide left turn

1
 State v. Chun, 194 N.J. 54 (2008), cert. denied, 555 U.S. 825,
129 S. Ct. 158, 172 L. Ed. 2d 41 (2008) was decided after
defendant's arrest and before his trial.

 2 A-5066-14T2
without coming to a full and complete stop at a stop sign. Officer

Shanley turned on his lights and siren and pulled the van over.

 Officer Shanley testified regarding his observations of the

driver, defendant Joseph Watson. He "smelled a strong odor of an

alcoholic beverage," believed defendant's eyes were "bloodshot and

watery" and his speech was "slow [and] slurred." Defendant

admitted he had "[a] couple drinks." Officer Shanley observed a

clear plastic cup in the cup holder with a "copper colored

beverage" in it, which defendant told Officer Shanley was his

friend's drink. Officer Shanley also observed an open bottle of

vodka in a box behind the driver's seat.

 Officer Shanley asked defendant to step out of the vehicle

to conduct psycho-physical tests. He first asked defendant if he

was injured; defendant responded he was not. He then explained

and demonstrated the nine-step walk and turn test and asked

defendant to perform the test. Officer Shanley testified defendant

was instructed to leave his hands at his sides, but defendant

"used his arms for balance," raising them "over six inches."

Defendant also turned incorrectly, stopped to steady himself, and

took the wrong number of steps. Officer Shanley also explained

and demonstrated the one-legged stand test. Again, defendant

"used his arms for balance and he sway[ed] while he was balancing."

 3 A-5066-14T2
 Officer Shanley placed defendant under arrest and transported

him to the Passaic County Sheriff's Department, approximately

fifteen minutes away. Officer Shanley was able to detect an odor

of alcohol coming from the rear of his vehicle where defendant was

located.

 At the station, defendant was placed in the DWI cellblock.

Officer Shanley observed him for thirty minutes, looking for signs

he was sick, burping or regurgitating and saw none. After the

thirty-minute observation period, Officer Shanley "read

[defendant] the standard statement for operators of motor vehicles

to see if he was willing to take the Alcotest and [defendant] said

yes."

 Officer Shanley, who was certified to use the Alcotest,

explained how to operate the machine.2 In this case, defendant

gave eight separate breath samples, which produced two valid

results. Officer Shanley placed a new mouthpiece after each

sample. The first result showed a .082 and .082%.3 The second

2
 Testimony was also presented regarding the periodic examination
of the Alcotest, its calibration record, and that there was a
calibration certificate for each part of the test, which included
a control test and linearity test. Dr. Thomas A. Vertel, Ph.D.,
the forensic laboratory director for the Division of the State
Police, certified the simulator solutions for the Alcotest.
3
 The results include an infrared technology (IR) and electric
chemical (ER) results, which is why it has two numbers.

 4 A-5066-14T2
result was .089 and .089%. The Alcotest result was a blood alcohol

concentration (BAC) of 0.08%.

 During cross-examination, Officer Shanley testified defendant

stated he had a cold when asked if he was ill. He also testified

he read defendant his Miranda4 rights before questioning him

further about what he had to drink and what he ate that day.

Officer Shanley testified defendant stated he had two alcoholic

drinks, but could not recall what time during the day. Defendant

also said he ate turkey that day.

 Dr. Saperstein was stipulated to be an expert as to the

operation and administration of the testing of the Alcotest and

testified on behalf of defendant. He opined that, within a

reasonable degree of scientific probability, defendant's true BAC

was below 0.08%.

 Dr. Saperstein testified that since defendant had a cold, if

his body temperature was slightly raised, this would cause a change

in the breath results. Dr. Saperstein also noted the calibration

certificate for the Alcotest was .098 percent, but the machine

actually tested .10 percent. Therefore, he stated the machine was

testing slightly higher than what the calibration certificate

stated. Dr. Saperstein also cited a general comment made by the

4
 Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d
694 (1966).

 5 A-5066-14T2
Special Master in Chun that "there is analytical error that could

be in the range of .004 to .005." Dr. Saperstein concluded that

since the Supreme Court did not address this specific issue, "we

can only assume that they accepted this finding by" the Special

Master. Dr. Saperstein conceded, however, "[a]ll these errors are

not humongous," and stated there was a "reasonable probability

that the defendant's true alcohol level could have been slightly

below [0.08%]."

 The municipal court judge found Officer Shanley's testimony

credible, noting his "demeanor as well as the objective

reasonableness of his testimony." He noted Officer Shanley had

eighteen years' experience as a police officer and had "worked as

a bartender for [twelve] years."

 The municipal court judge then discussed his findings

pertaining to Dr. Saperstein. The judge found Chun disposed of

the temperature issue. As to the argument that there was

analytical error, the court found the Supreme Court "recognized"

this machine was "an accurate device, scientifically accurate to

measure the blood alcohol of defendant, or breath alcohol of the

defendant."

 Furthermore, the municipal court judge found there was "ample

evidence of the defendant being under the influence," based on

Officer Shanley's sensory impressions, defendant's "erratic

 6 A-5066-14T2
driving," and defendant's poor performance in the two field

sobriety tests.

 The municipal court judge found defendant guilty of failing

to stop at a stop sign and the open container violation. He merged

the stop sign violation with the DWI charge and sentenced defendant

to a three-month license suspension, twelve hours at the I.D.R.C.,

$400 fine, $33 courts costs, $50 VCCB penalty, $200 D.W.I.

surcharge and $75 Safe Neighborhood Services Fund. The judge

imposed a fine and court costs for the open container violation.

The sentence was stayed for twenty days pending any appeal.

 Defendant appealed to the Law Division. Among the arguments

raised, he challenged the Alcotest reading on several grounds and

contended his trial counsel was ineffective because he failed to

call him as a witness.

 The Law Division judge remanded the matter to municipal court

to permit defendant to testify and to supplement the record

regarding the use of cell phones at the time of the Alcotest. The

remand proceedings were conducted on March 31 and June 29, 2009.

 In the remand proceedings, defendant provided the following

version of events. He was traveling at a "normal speed" when he

observed Officer Shanley, who then began following him. He stopped

at the red light and the stop sign in question.

 7 A-5066-14T2
 After defendant stepped out of the vehicle, Officer Shanley

asked him whether he had been drinking. Defendant told Officer

Shanley he had punch earlier in the day, but did not tell him

there was Grey Goose in it or that he had a couple of drinks. He

also told Officer Shanley he was very sick and had taken Nyquil

that day.

 Describing the sobriety tests administered to him, defendant

testified Officer Shanley never administered a one-legged stand

test and stated his difficulty in following Officer Shanley's

instructions to follow a pen from left to right with his eyes and

keep his head straight was due to his Bell's palsy.5

 As to the nine-step walk, defendant testified Officer Shanley

told him to take nine steps forward, turn around, and take nine

steps back. According to defendant, there were "a lot of leaves

on the ground." He mentioned this to Officer Shanley, but all he

did was brush the leaves away with his foot. The leaves were not

cleared and defendant had to be careful not to step on the leaves

and slip. He also testified the driveway was uneven and Officer

Shanley did not instruct him on how to complete the steps.

However, defendant admitted on cross-examination that the leaves

5
 The State did not present evidence about a Horizontal Gaze
Nystagmus (HGN) test.

 8 A-5066-14T2
on the ground did not affect the nine-step test and that he did

it "military style" and "did the test perfect."

 According to defendant, Officer Shanley then asked to search

the van, but defendant told him he could not search without a

warrant. When Officer Shanley asked what was in the box in the

back seat of the car, defendant told him it was someone else's

empty bottle. Defendant testified that Officer Shanley did not

read him his Miranda rights.

 Defendant testified that when he was at the station, he had

to blow into a breathalyzer machine. He testified he told Officer

Shanley about his Bell's palsy and that it was difficult for him

to do that, and then attempted to comply. He blew into the machine

two times, was removed into another room to complete paperwork for

five to ten minutes, and then came back to the same room to

continue.

 Defendant testified there was a cell phone in the testing

room, "right by the machine." The cell phone was on and he stated

"[i]t rang a couple of times" when he was blowing into the machine.

Defendant called his then girlfriend and left her a voicemail to

call him back because he was at the station. Defendant's cell

phone records reflect outgoing calls to his girlfriend's number

at 7:53 p.m. (five minutes in duration), 8:21 p.m. (one minute),

8:36 p.m. (two minutes), 8:44 p.m. (three minutes), 8:47 p.m. (one

 9 A-5066-14T2
minute), and 9:37 p.m. (nine minutes). There were also incoming

calls at 8:48 p.m. (two minutes), and 8:55 p.m. (one minute).

 Defendant testified he was on his cell phone several times

around the machine and at one point, he had an officer use his

cell phone to give his girlfriend instructions on how to get to

the station.

 Defendant explained he was having a difficult time blowing

into the machine because his "lips and jaw [did not] lock [him]

into the machine like that, and it's hard for [him] to blow a

whistle" due to his Bell's palsy. He also testified Officer

Shanley did not change the mouthpiece on the machine each time

defendant blew into it or wear rubber gloves when administering

the test. On cross-examination, he modified his answer, stating

Officer Shanley changed the mouthpiece "a few times, not every

time." Defendant testified Officer Shanley asked if he was sick

after the breathalyzer examination was over and defendant stated

that he was "very sick," with a "cold and a bad fever."

 During cross-examination, defendant testified he used his

cell phone right after he finished blowing into the machine for

the last time, but then he stated he was "not sure" when he used

it, but it was "real close."

 The municipal court judge set forth his findings, including

his credibility findings, in a letter dated November 12, 2009, to

 10 A-5066-14T2
the Law Division judge. After summarizing defendant's testimony,

the municipal court judge stated he found defendant's testimony

"to be largely incredible." He noted he had previously found

Officer Shanley's testimony to be credible and that,

"[p]ractically all of the defendant's testimony is the complete

opposite of what the Sheriff's officer testified to."

 The judge stated,

 If the Court were to believe the defendant's
 testimony, Officer Shanley, an 18 year veteran
 of the Passaic County Sheriff's Department
 would have had to have grossly deviated from
 his duties and told the Court a wild story
 regarding the defendant's driving performance
 and on the field sobriety tests as well as the
 administration of the Alcotest . . . .

 He specifically found "the defendant's claims as to the manner

in which Officer Shanley processed his arrest to be incredible."

He noted defendant's account that he gave two breath samples, was

taken to an adjoining room and questioned and returned to the

Alcotest room to give his third to eighth breath samples was

refuted by the Alcohol Influence Report (AIR).

 The municipal court judge rejected defendant's claim he was

never read his Miranda rights as "completely incredible." The

judge also rejected his claim he never completed a one-legged

test, accepting, instead, Officer Shanley's testimony, which was

documented in his police report.

 11 A-5066-14T2
 As to defendant's testimony that his cell phone was being

used during the Alcotest, the phone records indicate that the

calls stopped between 7:53 p.m. and 8:21 p.m., the times that the

Alcotest was being performed. The municipal court judge concluded

the officers had defendant turn off his cell phone during that

time period.

 The municipal appeal from this decision was argued in the Law

Division on June 28, 2010. The Law Division judge reserved

decision and stated he would write an opinion.

 Four and one-half years later, on February 12, 2015, after

all municipal appeals were assigned to a retired judge who was on

recall, a status conference was conducted. Substituted defense

counsel attempted to reconstruct the procedural history for the

judge, who stated he would review the file and render a decision.

The judge discussed with counsel what should be included in the

file. A transcript of the oral argument before the prior judge

had not been ordered and so, had to be ordered for the judge to

review. After defense counsel stated two briefs had been filed

for the defense, the judge asked if further briefing was required.

Defense counsel answered, "No," and added he believed he had argued

the matter adequately before the prior judge. The only

qualification to his reply that additional briefing was

unnecessary was a reference to the possibility that a new case

 12 A-5066-14T2
might have come up in the intervening time since he had argued the

case. Nonetheless, defendant filed a supplemental brief, dated

May 19, 2015, in which he argued for the first time that the delay

in his case violated his right to a speedy trial.

 The Law Division judge rendered his decision on June 9, 2015.

The Law Division judge considered the municipal court judge's

credibility determinations and further found Officer Shanley was

a credible witness, "objectively reasonable and consistent." As

to defendant, the judge found that his testimony "appeared to be

prepared in a sense that it contradicted nearly every significant

fact testified to by Officer Shanley."

 The Law Division judge found the Alcotest results were

admissible as the State proved by clear and convincing evidence

that the device was in working order. Citing Chun, the Law

Division judge also found the three concerns Dr. Saperstein noted

in his testimony were "without merit." In addition, the Law

Division judge found Officer Shanley's testimony as to defendant

driving in an "erratic manner," his sensory impressions, and

defendant's performance on field sobriety tests established beyond

a reasonable doubt that defendant was operating a motor vehicle

under the influence of alcohol. The Law Division judge found

defendant guilty of DWI, failing to stop at the stop sign and the

open container violation. The judge imposed the same penalties

 13 A-5066-14T2
as had been imposed in municipal court and continued the stay

pending appeal.

 The judge also addressed the speedy trial argument raised in

defendant's supplemental brief. He balanced the factors set forth

in Barker v. Wingo, 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101

(1972), adopted by our Supreme Court in State v. Gallegan, 117

N.J. 345, 355 (1989), and concluded defendant's constitutional

rights were not violated.

 Defendant presents the following arguments for our

consideration in his appeal:

 POINT I

 THE 2,756 DAY (91 MONTHS AND NEARLY EIGHT-
 YEAR) DELAY FROM THE DATE OF ARREST TO THE LAW
 DIVISION DECISION VIOLATES DEFENDANT'S SIXTH
 AMENDMENT AND STATE COURT RIGHT TO A SPEEDY
 TRIAL.

 POINT II

 THE DWI CONVICTION MUST BE REVERSED AND A
 JUDGMENT OF ACQUITTAL ENTERED SINCE THE
 ALCOTEST READING OF 0.08% IS UNRELIABLE AND
 MUST BE RULED IN-ADMISSIBLE EVIDENCE SINCE AN
 ESSENTIAL REQUIREMENT AS TO THE RELIABILITY
 OF THE ALCOTEST WAS NOT ADHERED TO; NAMELY,
 THE DEFENDANT HAD HIS CELL PHONE ON HIM AND
 MADE AND RECEIVED SEVERAL CALLS WHILE GIVING
 THE BREATH SAMPLES.

 POINT III

 THE DWI CONVICTION MUST BE REVERSED AND A
 JUDGMENT OF ACQUITTAL ENTERED SINCE THE
 ALCOTEST READINGS OF 0.08% IS UNRELIABLE SINCE

 14 A-5066-14T2
 AN ESSENTIAL REQUIREMENT AS TO THE RELIABILITY
 OF THE ALCOTEST WAS NOT ADHERED TO; NAMELY,
 THE DEFENDANT WAS NOT PROPERLY INSTRUCTED AS
 TO HOW TO BLOW INTO THE ALCOTEST MACHINE (AND
 THE DEFENDANT SUFFERS FROM BELL'S PALSY WHICH
 IMPEDES HIS ABILITY TO BLOW).

 POINT IV

 THE DEFENSE EXPERT DR. RICHARD SAFERSTEIN
 OPINED THAT, WITHIN A REASONABLE DEGREE OF
 SCIENTIFIC PROBABILITY, THE DEFENDANT'S TRUE
 BLOOD ALCOHOL CONCENTRATION (BAC) AT THE TIME
 OF THE TEST WAS 0.07% MANDATING A REVERSAL OF
 THE DWI CONVICTION.

 POINT V

 THE ALCOTEST RESULTS MUST BE SUPPRESSED AND
 THE DWI CONVICTION REVERSED SINCE THE STATE
 DID NOT ESTABLISH BY CLEAR AND CONVINCING
 EVIDENCE THAT THE DEFENDANT DID NOT INGEST,
 REGURGITATE OR PLACE ANYTHING IN HIS MOUTH FOR
 A PERIOD OF AT LEAST TWENTY MINUTES PRIOR TO
 THE ADMINISTRATION OF THE ALCOTEST.

 POINT VI

 THE DWI CONVICTION MUST BE REVERSED AND A
 JUDGMENT OF ACQUITTAL ENTERED SINCE THE STATE
 FAILED TO PROVE BEYOND A REASONABLE DOUBT THAT
 THE DEFENDANT OPERATED A MOTOR VEHICLE WHILE
 UNDER THE INFLUENCE OF ALCOHOL IN VIOLATION
 OF THE DEFENDANT'S FOURTEENTH AMENDMENT DUE
 PROCESS AND STATE CONSTITUTIONAL.

 II.

 The question whether defendant's constitutional right to a

speedy trial was violated is a legal issue and therefore subject

to de novo review. See, State v. Handy, 206 N.J. 39, 45 (2011).

 15 A-5066-14T2
 In Barker, supra, 407 U.S. at 530, 92 S. Ct. at 2192, 33 L.

Ed. 2d at 117, the United States Supreme Court established a

balancing test that continues to govern the evaluation of claims

of speedy trial violations. Under this test, the trial court must

assess four non-exclusive factors: "[l]ength of delay, the reason

for the delay, the defendant's assertion of [the right to speedy

trial], and prejudice to the defendant." Ibid. This four-factor

test must be used to evaluate all claims of a denial of a

"constitutional right to a speedy trial in all criminal and quasi-

criminal matters," State v. Cahill, 213 N.J. 253, 258 (2013),

including municipal prosecutions. See State v. Berezansky, 386

N.J. Super. 84 (App. Div. 2006), certif. granted, 191 N.J. 317

(2007), appeal dismissed, 196 N.J. 82 (2008).

 We turn first to the length of delay. As our Supreme Court

has instructed, a delay of more than one year is sufficient to

warrant consideration of the remaining Barker factors, Cahill,

supra, 213 N.J. at 266. The delay here is clearly sufficient to

require consideration of the remaining Barker factors.

 Defendant argues the delay from the date of his arrest to the

date of the Law Division decision that determined his guilt

violated his rights. He compares this nearly eight-year delay to

cases in which shorter delays between arrest and trial in the

municipal court resulted in the dismissal of charges. This

 16 A-5066-14T2
argument ignores the fact that during the course of those eight

years, defendant had: a trial in municipal court, an appeal to the

Law Division, proceedings in the municipal court pursuant to the

remand, a second appeal, and oral argument of that appeal in the

Law Division. He has not argued that the delay from arrest to

trial in municipal court violated his constitutional rights. The

extraordinary five-year delay occurred between the time the second

appeal was argued in the Law Division and the final decision by a

different Law Division judge.6

 The second factor to be addressed is the reason for the delay.

Again, defendant directs his argument to the five-year delay. He

contends the State bears responsibility for prosecuting cases in

a timely fashion and because the delay was due to the State's

negligence in failing to do so, the delay must be weighed against

the State. The State counters that there is no evidence that

there was any intentional delay by either the prosecution or the

State –- and defendant does not claim to the contrary.

 The trial judge found the cause for the delay was

"administrative." He noted the matter was originally assigned to

6
 The Court of Appeals for the Third Circuit has recognized that
"the [Federal] Due Process Clause guarantees a reasonably speedy
appeal[.]" Simmons v. Beyer, 44 F.3d 1160, 1169 (3d. Cir.)
(citation and internal quotations omitted), cert. denied, 516 U.S.
905, 116 S. Ct. 271, 133 L. Ed. 2d 192 (1995).

 17 A-5066-14T2
another judge and assigned to him when he returned on recall and

that he was out for several months due to surgery.

 The third factor concerns when defendant asserted his right

to a speedy resolution of his case. Although "[a] defendant does

not have an obligation to assert his right to a speedy trial,"

Cahill, supra, 213 N.J. at 266, "'[w]hether and how a defendant

asserts his right is closely related' to the length of the delay,

the reason for the delay, and any prejudice suffered by the

defendant." Ibid. (quoting Barker, supra, 407 U.S. at 531, 92 S.

Ct. at 2192, 33 L.Ed. 2d at 117). In light of this relationship,

"the assertion of a right to a speedy trial in the face of

continuing delays is a factor entitled to strong weight when

determining whether the state has violated the right." Ibid.

 Defendant did not assert his right to a speedy trial, or more

accurately, a right to a speedy resolution of his appeal, until

May 2015, seven and one-half years after his arrest. It is

entirely understandable that he might not be eager to seek a

resolution of his appeal since the sentence was stayed pending

appeal and the loss of license that would result from an affirmance

would have a negative effect on his employment as a New Jersey

Transit bus driver. But it is also reasonable to infer, as the

State argues, that in a case where the delay was attributable at

 18 A-5066-14T2
worst to negligence, the delay might have been shortened if

defendant had made a demand earlier.

 Finally, we turn to the fourth factor, prejudice to defendant.

In addressing prejudice to defendant, we assess three interests:

prevention of oppressive pretrial incarceration, minimization of

defendant's anxiety concerns and whether the defense has been

impaired by the delay. See Barker, supra, 407 U.S. at 532, 92 S.

Ct. at 2193, 33 L. Ed. 2d at 118; Cahill, supra, 213 N.J. at 266.

 Defendant does not contend his defense was impaired as a

result of the delay. Indeed, all fact-finding in the initial

trial and the remand proceeding was long completed. Instead, he

cites enduring uncertainty as the charge hung over his head, the

expenses caused by the litigation, an inability to plan his life

and social events and claims he suffered a deterioration in his

health. As part of his contention that his ability to plan his

life was inhibited, defendant states he had to remain available

for court appearances. However, he has not identified any court

appearances that required his attendance during the period from

oral argument on his appeal to the court's decision.

 Plainly, two of the three interests to be addressed in

assessing prejudice are not applicable here. There was no

incarceration and no impairment of the defense. We agree that,

generally, some measure of personal unease would be caused by a

 19 A-5066-14T2
lingering appeal and do not doubt that defendant experienced this

during the delay. But, this is substantially mitigated by the

fact that defendant's sentence was stayed pending appeal,

permitting defendant to continue his employment. The hardship of

waiting for a disposition, alone, "is insufficient to constitute

meaningful prejudice." State v. Misurella, 421 N.J. Super. 538,

546 (App. Div. 2011) (quoting State v. Le Furge, 222 N.J. Super.

92, 99-100 (App. Div. 1988)).

 In sum, although the delay from oral argument of the municipal

appeal to decision by the Law Division was inordinate, there was

no intentional delay by the State or the courts, defendant's

assertion of his right came more than seven years after his arrest,

and there has been no appreciable prejudice to defendant.

Balancing these factors, we conclude the delay here did not deprive

defendant of any constitutional right.

 III.

 In Points II, III, IV and V, defendant challenges the Alcotest

result as unreliable and argues that, as a result, his DWI

conviction must be reversed. Defendant does not argue the required

foundational documents were not submitted, see Chun, supra, 194

N.J. at 142-48, that Officer Shanley was not certified to operate

the device or that he lacked the proper training to do so. See

id. at 134.

 20 A-5066-14T2
 When the Law Division conducts a trial de novo on the record

developed in the municipal court, our appellate review is limited.

State v. Clarksburg Inn, 375 N.J. Super. 624, 639 (App. Div. 2005).

"The Law Division judge was bound to give 'due, although not

necessarily controlling, regard to the opportunity of a [municipal

court judge] to judge the credibility of the witnesses,'" ibid.

(alteration in original) (quoting State v. Johnson, 42 N.J. 146,

157 (1964)), as the Law Division judge is not in a position to

observe "'the character and demeanor of witnesses and common human

experience that are not transmitted by the record.'" See ibid.

(quoting State v. Locurto, 157 N.J. 463, 474 (1999)).

 "Our review is limited to determining whether there is

sufficient credible evidence present in the record to support the

findings of the Law Division judge, not the municipal court."

Ibid. (citing Johnson, supra, 42 N.J. at 161-62). Moreover,

"[u]nder the two-court rule, appellate courts ordinarily should

not undertake to alter concurrent findings of facts and credibility

determinations made by two lower courts absent a very obvious and

exceptional showing of error." Locurto, supra, 157 N.J. at 474.

In this case, the Law Division judge clearly understood that his

role was to make independent findings, as they were ultimately

reflected in his oral opinion. We therefore defer to those

findings. However, no such deference is owed to the Law Division

 21 A-5066-14T2
judge or the municipal court with respect to legal determinations

or conclusions reached on the basis of the facts. See Handy,

supra, 206 N.J. at 45.

 A.

 Defendant's first challenge to the reliability of the

Alcotest result is based upon a factual premise that was rejected

by the municipal court and Law Division. He states the result is

unreliable because his cell phone was on him and used while he

gave breath samples.7

 The State presented testimony from Officer Shanley that

refuted defendant's claim. Officer Shanley testified that the

standard procedure regarding communication devices in the Alcotest

room is "[n]o cell phones or radios in that area, no hand held

radios in that area," and he took steps to assure that there would

be no devices in the area.

 The municipal court judge found Officer Shanley's testimony

credible. The Law Division also found his testimony credible as

it was "objectively reasonable and consistent."

7
 In Chun, supra, 194 N.J. at 80, the Supreme Court stated the
operator of the Alcotest must "attach[] a new, disposable
mouthpiece and remove[] all cell phones and portable electronic
devices from the testing area." However, the Court also noted
"there is ample support for the finding that the Alcotest is well-
shielded from the impact of any potential RFI that might otherwise
affect the reported results or limit our confidence in the accuracy
of the test results." Id. at 89.

 22 A-5066-14T2
 The Law Division judge rejected defendant's argument that he

made and received phone calls while providing the breath samples

as grounds for rendering the Alcotest results inadmissible. He

relied upon findings in Chun that "there is ample support for the

finding that the Alcotest is well-shielded from the impact of any

potential RFI that might otherwise affect the reported results or

limit our confidence in the accuracy of the test results." Chun,

supra, 194 N.J. at 89. He also relied upon Officer Shanley's

testimony regarding standard procedure for removing such devices

from the test area and a comparison of the AIR with the cell phone

records to support the conclusion no calls were placed while the

results were obtained.

 According to the AIR, the first ambient air blank test was

performed at 8:02 p.m.; the first control test was at 8:03 p.m.;

the next ambient air blank was performed at 8:04 p.m.; and the

first breath test results were recorded at 8:06 p.m. The eighth

and final breath test results were recorded at 8:20 p.m. According

to defendant's cell phone records, there was a call made at 7:53

p.m., before any testing. Another call was made at 8:21 p.m. The

Law Division judge concluded that "there were no telephone calls

during the testing period." Although ambient air blank and control

tests were performed at 8:21 p.m. and 8:22 p.m., the Law Division

judge found that a telephone call placed during that time would

 23 A-5066-14T2
not invalidate the results obtained from the tests conducted prior

to the call.

 We therefore concur with the Law Division's conclusion that

this argument lacks merit, based on Chun and the record.

 B.

 Defendant next argues the Alcotest result is unreliable

because he was not properly instructed on how to blow into the

Alcotest machine, adding that his Bell's Palsy impeded his ability

to blow.8 This argument lacks merit, in light of the findings by

both the municipal court judge and the Law Division judge that

Officer Shanley's testimony was credible and defendant's testimony

regarding deviations in the procedure followed was incredible.

 Officer Shanley testified he took eight samples from

defendant and before each sample, "instruct[ed] him how to blow

into the machine." The fact that two valid results were produced

from the eight samples that were taken indicates the breath samples

defendant provided were adequate.

 The findings by the municipal court and Law Division judges

are supported by the record and entitled to our deference.

8
 Defendant did not present any expert testimony that Bell's palsy
affected the ability to blow into an Alcotest machine.

 24 A-5066-14T2
 C.

 Defendant also argues the Alcotest results must be suppressed

because the State failed to establish by clear and convincing

evidence that he did not ingest, regurgitate or place anything in

his mouth for a period of at least twenty minutes prior to the

test. We disagree.

 The State must establish by clear and convincing evidence

that during the twenty-minute period immediately before

administering the Alcotest, "the test subject did not ingest,

regurgitate or place anything in his mouth that could" compromise

the test results. State v. Ugrovics, 410 N.J. Super. 482, 489-90

(App. Div. 2009) (citing Chun, supra, 194 N.J. at 140), certif.

denied, 202 N.J. 346 (2010). The State can meet that burden

through the testimony of "any competent witness who can so attest."

Id. at 490.

 Officer Shanley testified that defendant was placed in the

D.W.I. cellblock, where he observed defendant for a half hour

before taking him to conduct the Alcotest. This testimony, which

was found to be credible, satisfied the State's burden.

Defendant's argument that Ugrovics required the observer to be a

competent witness other than the Alcotest operator lacks merit

since the clear import of Ugrovics was to clarify that the

competent witness may be someone other than the Alcotest operator.

 25 A-5066-14T2
 D.

 Defendant argues the expert testimony he presented

demonstrated his true BAC at the time of the Alcotest was 0.07%,

below the level for intoxication, rather than the Alcotest's BAC

result. The Law Division judge considered Dr. Saperstein's

testimony and noted that two of the concerns he identified,

regarding the effect of body temperature on the BAC reading and

that there is a .004 or a .005 margin of error in the machine,

lacked merit in light of the Supreme Court's decision in Chun.

 We agree with the Law Division's conclusions that these

arguments are not viable based on the Court's decision in Chun.

The Court acknowledged the debate regarding the effect of

temperature on Alcotest results and concluded "the effect of breath

temperature on BAC is theoretical at best, and that the effect,

if any, is ameliorated" by safeguards that "effectively

underestimate BAC." Chun, supra, 194 N.J. at 109.9 Dr.

Saperstein's opinion that the Alcotest result should be discounted

because there is a .004 or a .005 margin of error in the machine

is not tenable based upon the Court's conclusion that the Alcotest

9
 We note further there is no proof in the record, besides
defendant's testimony, that he had a "fever." Both courts found
defendant's testimony not credible.

 26 A-5066-14T2
device is sufficiently reliable to prove a per se violation of

N.J.S.A. 39:4-50. Id. at 65, 90, 148.

 The Law Division judge also noted Dr. Saperstein's concern

regarding the solution for the .10 simulator having a concentration

of .208 overlooked the results of control test, which refuted that

theory.

 There is ample support in the record for the Law Division

judge's conclusion that there was clear and convincing evidence

to support the admission of the Alcotest reading of .08% BAC into

evidence.

 IV.

 Finally, defendant argues the State failed to prove he

operated a motor vehicle while intoxicated beyond a reasonable

doubt. Pursuant to N.J.S.A. 39:4-50(a), a person violates the

statute of "driving while intoxicated," if he or she "operates a

motor vehicle under the influence of intoxicating liquor . . . or

operates a motor vehicle with a blood alcohol concentration of

0.08% or more by weight of alcohol in defendant's blood[.]" As

we have already determined, because defendant's challenges to the

Alcotest results fail, that result was properly admitted and

sufficient to establish his guilt.

 However, Officer Shanley's testimony, found credible by both

the municipal court judge and the Law Division judge, provided

 27 A-5066-14T2
independent proof that was sufficient to support defendant's DWI

conviction.

 Affirmed.

 28 A-5066-14T2