# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1924-16T2

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

N.J.E.,

      Defendant-Appellant.

_____

Argued September 18, 2018 – Decided October 3, 2018

Before Judge Ostrer, Currier, and Mayer.

On appeal from Superior Court of New Jersey, Law Division, Atlantic County, Indictment No. 14-04-0875.

Brian P. Keenan, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Brian P. Keenan, of counsel and on the brief).

Melinda A. Harrigan, Assistant Prosecutor, argued the cause for respondent (Damon G. Tyner, Atlantic County Prosecutor, attorney; Melinda A. Harrigan, of counsel and on the brief).

PER CURIAM

Defendant N.J.E. appeals from his conviction following a jury trial and subsequent sentence. After a review of his contentions in light of the record and applicable principles of law, we affirm.

In March 2012, defendant was charged in an indictment with second-degree sexual assault, N.J.S.A. 2C:14-2(c). A second indictment in June 2013 charged defendant with sexual assault by force, N.J.S.A. 2C:14-2(c)(1), sexual assault of a victim between the ages of thirteen and fifteen, N.J.S.A. 2C:14-2(c)(4), and endangering the welfare of a child, N.J.S.A. 2C:24-4(a). The charges arose from the sexual assault of a fourteen-year-old male friend of defendant's daughter, while the two minors were spending the night at defendant's home.

The trial on these charges did not take place until April 2016. In the interim between the indictment and the trial, there were numerous requests to postpone the trial, almost all initiated by defense counsel. When the trial date was again postponed in October 2014, defendant was released from jail.

After three days of trial, defendant was convicted on all charges. He was sentenced to ten years incarceration with an eighty-five percent parole ineligibility subject to the No Early Release Act, N.J.S.A. 2C:43-7.2, parole supervision for life, and other Megan's Law requirements.

On appeal defendant raises the following arguments:

> POINT I: THE STATE'S UNREASONABLE DELAY OF FOUR YEARS, THREE MONTHS, AND TEN DAYS, IN PROSECUTING THE CHARGES IN THIS CASE DEPRIVED [N.E.] OF HIS RIGHT TO A SPEEDY TRIAL.
>
> POINT II: ADMISSION OF SURROGATE TESTIMONY BY THE STATE'S SEROLOGY EXPERT, WHO DID NOT TEST THE SAMPLES, UNDERTAKE ANY INDEPENDENT ANALYSIS OR AUTHOR ANY INDEPENDENT CERTIFICATION OR REPORT, VIOLATED [N.E.]'S CONFRONTATION RIGHTS AND WAS INADMISSIBLE HEARSAY.
>
> POINT III: THE TRIAL JUDGE ERRED IN OMITTING A SIGNIFICANT PORTION OF THE COERCION SECTION OF THE JURY INSTRUCTION ON THE SEXUAL ASSAULT BY FORCE/COERCION CHARGE.
>
> POINT IV: THE TRIAL JUDGE ERRED IN IMPOSING THE MAXIMUM TEN-YEAR TERM ON A SECOND-DEGREE OFFENSE AFTER FINDING ONLY AGGRAVATING FACTORS THREE, SIX, AND NINE.

Defendant asserts his right to a speedy trial under the Sixth Amendment of the United States Constitution was violated by the State's unreasonable delay of four years to prosecute his case. Whether defendant's constitutional right to a speedy trial was violated presents a legal issue that is subject to de novo review. See State v. Handy, 206 N.J. 39, 44-45 (2011). However, we will not

3

overturn a trial court's factual determination on a speedy trial issue unless it is "clearly erroneous." State v. Merlino, 153 N.J. Super. 12, 17 n.7 (App. Div. 1977).

On May 18, 2015, defense counsel asserted defendant's speedy trial right and requested the dismissal of the indictment. The trial judge, while acknowledging the delays in prosecuting the case, also noted the State was prepared on the current trial date but the court had scheduling issues necessitating a trial postponement. The judge further noted defendant was not then incarcerated and had not been impacted by the delays to date. The court permitted defendant to renew his application if the State was not prepared to proceed on the next trial date. When the court again adjourned the trial in January 2016, due to a lack of available judges, defendant renewed his speedy trial application, which the court denied.

We assess the asserted violation of defendant's speedy trial right using the four-factor balancing analysis set forth in Barker v. Wingo, 407 U.S. 514, 530 (1972). See State v. Cahill, 213 N.J. 253, 258 (2013) ("We conclude that the four-factor balancing analysis of [Barker] remains the governing standard to evaluate claims of a denial of the federal and state constitutional right to a speedy trial in all criminal and quasi-criminal matters."). The four non-

exclusive factors are: (1) length of the delay, (2) reason for the delay, (3) a defendant's assertion of the right, and (4) prejudice to the defendant.  Id. at 264 (citing Barker, 407 U.S. at 530).  No one factor determines a violation.  Id. at 267 (citing Barker, 407 U.S. at 533).  Rather, they are related factors to be considered together with such other circumstances as may be relevant.  Barker, 407 U.S. at 533.  The analysis is highly fact-sensitive and requires "a case-by-case analysis rather than a bright-line time limitation."  Cahill, 213 N.J. at 270.

Under the first factor, the inquiry is whether the length of the delay "is reasonable or whether it violated defendant's right to a speedy trial."  Id. at 272-73.  Depending on the circumstances, the length of the delay may be presumptively prejudicial and such a delay will trigger consideration of the other factors, including the nature of the charges against the defendant.  Id. at 264-65.  Typically, once the delay exceeds one year, it is appropriate to analyze the remaining Barker factors.  Id. at 266.  However, there is no bright-line test requiring dismissal after a specified period of delay.  Id. at 270.

Without doubt, the length of the delay here weighs in defendant's favor.  He was incarcerated for two and one-half years prior to being released, subject to electronic monitoring for a period of time, and waited four years for a trial.

A-1924-16T2

Such a lengthy troubling delay is presumptively prejudicial and so we must address the remaining factors.

As for the second and third factors, the Court has noted, "[a]ny delay that defendant caused or requested would not weigh in favor of finding a speedy trial violation." State v. Gallegan, 117 N.J. 345, 355 (1989). Further, while "[a] defendant does not . . . have the obligation to bring himself to trial[,]" a failure to timely assert the right, is a factor to be considered when assessing an alleged speedy trial violation. Cahill, 213 N.J. at 274.

Here, the trial judge found, with ample support in the record, that defendant was responsible for most of the delays while he was incarcerated. A review of the record reveals that defense counsel requested postponements of hearings and trial dates at least a dozen times while defendant remained in prison. In May 2014, defense counsel advised for the first time that he wanted to retain a DNA expert and needed three to four weeks for the expert to prepare a report. On that same date, the State advised the court it would like to try the case by early June as the victim and his family were moving out of state. In July, defense counsel stated he did not intend to use a DNA expert and both parties agreed the matter was ready for a trial listing.

A-1924-16T2

On the October 20, 2014 trial date, the State requested an adjournment for the first time. As a result, defense counsel requested defendant's release from jail and, over the State's objection, the court agreed. Several more trial dates came and went, with adjournments due to both defense counsel and the court's scheduling conflicts. It cannot be disputed that the great majority of postponements causing the delay in prosecuting the matter were at the behest of defendant. This factor does not weigh in his favor.

Factor three also weighs against defendant. He did not assert his right to a speedy trial until May 18, 2015, more than three years after his arrest and first indictment.

Evaluating the fourth factor, prejudice, requires a consideration of three interests: preventing oppressive pretrial incarceration, minimizing defendant's anxiety concerns, and avoiding impairment of the defense. See Barker, 407 U.S. at 532; Cahill, 213 N.J. at 266. We have stated, however, that the hardship caused by the uncertainty of awaiting disposition of a case, "is insufficient to constitute meaningful prejudice." State v. Misurella, 421 N.J. Super. 538, 546 (App. Div. 2011) (quoting State v. Le Furge, 222 N.J. Super. 92, 99-100 (App. Div. 1988)).

The record does not support defendant's argument that he was prejudiced by the delay. He was released from prison on October 20, 2014, and provides no specific detail as to his anxiety or resulting prejudice due to the delay. Therefore, despite the presumptive lengthy delay before trial, the three remaining Barker factors do not weigh in defendant's favor, and he has not demonstrated he was denied a speedy trial.

We turn next to defendant's Confrontation Clause argument. During discovery, the State retained a serology expert who prepared a report stating that the victim's tank top had semen on it. A DNA expert opined that defendant's DNA profile matched the DNA profile of the semen found on the tank top. Because the original serology expert had retired prior to trial, the State sought to present a replacement witness – Laura Tramontin. After conducting a Rule 104 hearing, the judge cited the factors required under State v. Michaels, 219 N.J. 1, 6-7 (2014), to admit the substitute expert and her testimony. The judge found Tramontin was an independent reviewer. He noted that Tramontin reviewed and agreed with the initial report's findings, and then she subsequently reviewed the test results and made her own conclusions as to the serology results. Therefore, the judge was satisfied that defendant's confrontation rights

A-1924-16T2

were not violated as Tramontin was subject to cross-examination on all aspects of her testing.

"[T]he decision to admit or exclude evidence is one firmly entrusted to the trial court's discretion." Estate of Hanges v. Metro. Prop. & Cas. Ins. Co., 202 N.J. 369, 383-84 (2010). "We review the trial court's evidentiary ruling under a deferential standard; it should be upheld absent a showing of an abuse of discretion, i.e., there has been a clear error of judgment" which is "so wide of the mark that a manifest denial of justice resulted." State v. J.A.C., 210 N.J. 281, 295 (2012) (quoting State v. Brown, 170 N.J. 138, 147 (2001)).

Defendant contends the trial judge erred in admitting Tramontin's testimony because it violated defendant's rights guaranteed under the Confrontation Clause in the Sixth Amendment. We disagree.

In support of his argument, defendant relies on Bullcoming v. New Mexico, 564 U.S. 647 (2011). There, the United States Supreme Court considered the issue of the admissibility of an expert report proffered through a surrogate witness's testimony. The witness did not observe the work of the analyst who performed the testing, did not supervise the analyst, or certify the results obtained by the analyst. Under those circumstances, the Court found a violation of defendant's confrontation right, rendering the testimony

inadmissible.  But see Williams v. Illinois, 567 U.S. 50 (2012) (plurality opinion) (affirming the admissibility of an expert's testimony in a bench trial that related the contents of a DNA testing report and results prepared by a non-testifying witness).

Our Supreme Court has permitted the State to present testimony from a qualified expert who supervised the testing and conducted an independent observation and analysis regarding the test results.  State v. Bass, 224 N.J. 285, 291-92 (2016); Michaels, 219 N.J. at 6, 45-46; State v. Roach, 219 N.J. 58, 61, 79-80 (2014).  In Bass, the Court stated that "[A] truly independent reviewer or supervisor of testing results can testify to those results and to his or her conclusions about those results, without violating a defendant's confrontation rights," if the independent reviewer or supervisor meets three requirements.  224 N.J. at 315 (quoting Michaels, 219 N.J. at 45-46).  The testifying reviewer must (1) be "knowledgeable about the testing process"; (2) "independently verif[y] the correctness of the machine-tested processes and results"; and (3) "form[] an independent conclusion about the results."  Ibid. (quoting Michaels, 219 N.J. at 45-46).

Tramontin was the assistant lab director of the serology unit of the Office of Forensic Sciences of the New Jersey State Police.  She directly supervised

the original preparer of the serology report. In that capacity, Tramontin testified she was responsible for overseeing and directly supervising "a team of analysts in the daily operation of analysis of body fluid identification," had extensive familiarity with the serological testing process, reviewed the work of analysts under her supervision and recognized the report in this case as one she administratively reviewed. Tramontin reviewed the test data produced by the original preparer and arrived at the same conclusion as the prior analyst. Although Tramontin did not produce her own independent report based on the data, she had initialed the bottom of each page of the original report, indicating she confirmed the data's accuracy and that it satisfied the lab's administrative procedures.

We disagree with defendant's argument that Tramontin's testimony is inadmissible under <u>Bullcoming</u>. There, the prosecutors sought to introduce the testimony of a surrogate expert witness who "could not convey what [the certifying analyst] knew or observed about the events his certification concerned, i.e., the particular test and testing process he employed. Nor could such surrogate testimony expose any lapses or lies on the certifying analyst's part." Here, however, as noted by the trial judge, Tramontin had specific knowledge of the testing processes, personally reviewed the data, came to her

11

own independent conclusions based on that data, and certified the original report. The judge properly analyzed the criteria under <u>Bass</u> and <u>Michaels</u> and did not abuse his discretion in admitting the testimony.

On appeal, defendant contends the trial judge erred in omitting the "coercion" portion of the model jury charge on sexual assault. As there was no objection during trial, we review for plain error. <u>R.</u> 2:10-2. Defendant must demonstrate a "[l]egal impropriety in the charge prejudicially affecting [his] substantial rights . . . and sufficiently grievous to justify notice by the reviewing court and to convince the court that of itself the error possessed a clear capacity to bring about an unjust result." <u>State v. Camacho</u>, 218 N.J. 533, 554 (2014) (internal quotation marks omitted). We are satisfied defendant has not met that burden.

The pertinent part of the model jury charge regarding sexual assault states: "[t]he third element that the State must prove beyond a reasonable doubt is that defendant used physical force <u>or</u> coercion." <u>Model Jury Charges (Criminal)</u>, "Sexual Assault (Force/Coercion) (N.J.S.A. 2C:14-2c(1))" (rev. Jan. 24, 2005) (emphasis added). After reading that sentence, the judge stated: "In this case, the State's theory is that the defendant used physical force." Accordingly, the judge did not read the section of the charge instructing on the coercion element.

12

Defendant did not object to the proposed sexual assault charge at the charge conference or during the charge to the jury. As the Supreme Court has stated, "[I]f the defendant does not object to the charge at the time it is given, there is a presumption that the charge was not error and was unlikely to prejudice the defendant's case." State v. Singleton, 211 N.J. 157, 182 (2012).

We discern no prejudice here. As demonstrated in closing arguments, the State's theory was that defendant sexually assaulted the victim by force, not coercion. In his summation the prosecutor argued "[D]efendant put his penis in [the victim's] mouth. He did this by first grabbing the victim's hand and making him masturbate. . . . then took his own hand and forced [the victim's] head down to his penis." The prosecutor continued, stating "[The victim] says that he was forced by the defendant to help him masturbate and then defendant forced his penis in [the victim's] mouth and ejaculated." In discussing the specific charges, the prosecutor asserted: "[E]ven if you believe from Count 1 there's no force, well, still against the law to engage in sexual contact with a minor."

In denying defendant's motion for acquittal notwithstanding the verdict, the trial judge stated:

> [T]he jury was in my view properly instructed on the issues of force or coercion. The jury had evidence from the victim relative to his will being subject to the demands of the defendant in this case, and that alone,

13

based on the applicable law, would be sufficient for the jury to find force or coercion.

Therefore, as the State only needed to prove sexual assault by physical force <u>or</u> coercion, and its case was based on the theory of force, there was no prejudice in the omission of the coercion portion of the jury charge.

We turn next to defendant's argument that the "sentencing judge here erred in imposing the maximum sentence for a second-degree offense after finding only aggravating factors three[,] six, and nine applicable." Reviewing a trial court's sentencing determination under a deferential standard of review, we are "bound to affirm a sentence, even if [we] would have arrived at a different result, as long as the trial court properly identifies and balances aggravating and mitigating factors that are supported by competent credible evidence in the record." <u>State v. Grate</u>, 220 N.J. 317, 337 (2015) (quoting <u>State v. Lawless</u>, 214 N.J. 594, 606 (2013)).

Here, the sentencing judge thoroughly evaluated both the aggravating and mitigating factors in fashioning an appropriate sentence, concluding there were no mitigating factors and finding aggravating factors three, N.J.S.A. 2C:44-1(a)(3); six, N.J.S.A. 2C:44-1(a)(6); and nine, N.J.S.A. 2C:44-1(a)(9). In discussing aggravating factor three, the judge noted defendant had thirteen prior arrests and five prior convictions. Defendant's convictions were for third-degree

possession of CDS and fourth-degree criminal trespass and at the time of the current offense, he was on probation. The judge stated:

> There is more than a risk that the defendant will commit another offense. With his track record and his criminal history, it is a virtual certainty that when left to his own devices this defendant will offend again. Given the escalation of his criminal behavior, the court is convinced that when the defendant offends again, it is more than probable that he will do so in a violent or sexual manner.

In considering factor six, the judge noted defendant's criminal history and "the seriousness of the instant offenses show[] that [he] is a dangerous recidivist" whose tendencies could only be managed through a substantial commitment to state prison. Lastly, the court found factor nine to be applicable because of the "obvious need for deterring this defendant specifically." The judge stated: defendant "appears to remain offense free only when he is confined" and noted any prior attempts at rehabilitation and confinement failed to have the desired deterrent effect.

Therefore, because the court found three aggravating factors to apply with a great degree of weight supported by substantial facts and evidence in the record, and no mitigating factors, there was no abuse of discretion in imposing the maximum sentence in the range for a second-degree crime.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

15

A-1924-16T2