STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v. THOMAS LEFURGE, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted October 28, 1987—Decided January 8, 1988.

Before Judges FURMAN, BRODY and LONG.

*Alfred A. Slocum,* Public Defender, attorney for appellant (*Terence Farrell,* Designated Counsel, of counsel and on the letter brief).

*Paul M. DePascal,* Prosecutor of Hudson County, attorney for respondent (*William C. Whitehouse,* Assistant Prosecutor, on the brief).

The opinion of the court was delivered by

LONG, J.A.D.

The question we address today is whether the speedy trial clause of the Sixth Amendment to the United States Constitution applies to a period of time during which a defendant is not in jail or under any official restraint. In confronting this issue, we have adopted the approach recently enunciated by the United States Supreme Court in *United States v. Loud Hawk,* 474 *U.S.* 302, 106 *S.Ct.* 648, 88 *L.Ed.*2d 640 (1986) and have

concluded that the time during which a defendant is not subject to liberty restraints should not apply in calculating a denial of a speedy trial claim.

The facts of this case are as follows: In September, 1981, defendant, Thomas LeFurge, was indicted by a Hudson County Grand Jury for theft of moveable property of a value in excess of $500 (*N.J.S.A.* 2C:20–3) and for theft by failure to make required disposition of property (*N.J.S.A.* 2C:20–9). A trial was held in May of 1982. At the end of the State's case, the count charging a violation of *N.J.S.A.* 2C:20–9 was dismissed. The trial judge then announced his intention to instruct the jury that it could find LeFurge guilty of the crime of conspiracy to commit theft pursuant to *N.J.S.A.* 2C:1–8(d)(2). On May 11, 1982, the jury returned a verdict acquitting LeFurge of the remaining theft charge and convicting him of conspiracy to commit theft.

LeFurge made several post-trial motions including a motion in arrest of judgment which was granted on June 25, 1982, on which date the conspiracy charge was dismissed. On August 21, 1982, the State filed a notice of appeal. By Petition for Extension of Time, filed January 28, 1983, the State was granted thirty additional days within which to file its brief. That brief was filed on March 7, 1983.

On August 23, 1983, this court entered an order that no brief on behalf of LeFurge would be accepted for filing. This order was subsequently vacated and LeFurge filed a brief on March 22, 1984. On June 21, 1984, this court affirmed the judgment of the trial court. In July 1984, the State filed a Notice of Petition for Certification. LeFurge filed a letter brief and affidavit in opposition to the petition on January 19, 1985. On March 21, 1985, certification was granted to decide the following question:

The critical issue in this case is the constitutionality of *N.J.S.A.* 2C:1–8(d)(2), which provides that a defendant may be convicted of a conspiracy to commit a substantive offense even though the crime of conspiracy was not charged in the indictment.

Supplementary briefs, reply briefs and letters were filed by both parties, the last pleading dated July 25, 1985. Oral argument took place on September 24, 1985. On January 9, 1986, the Supreme Court reinstated LeFurge's conviction.

LeFurge was sentenced on February 14, 1986, to five-year probation on condition that he serve 250 days in the Hudson County Jail. A Violent Crimes Compensation Board penalty of $50 was also imposed. The execution of sentence was stayed and LeFurge was released on bail. LeFurge appeals claiming that:

> THE INORDINATE DELAY IN THE DISPOSITION OF THE STATE'S APPEAL DEPRIVED THE DEFENDANT OF RIGHTS ARISING FROM THE UNITED STATES CONSTITUTION ... (Not raised Below).

We disagree and affirm.

█ The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial...." In *United States v. Loud Hawk, supra,* the Supreme Court delineated the scope of the Sixth Amendment's protection as it relates to defendants who are not incarcerated or subjected to other substantial restrictions on their liberty. In that case, the defendants were indicted in November, 1975. Prior to trial, they filed a motion to suppress evidence which was granted on March 31, 1976. The Government appealed requesting a continuance which was not granted. When the Government declined to proceed on the date of the trial, the judge dismissed the indictment with prejudice. The Government then instituted a series of appeals which resulted in a reversal of the suppression order and a reinstatement of the matter. Thereafter, another series of motions, appeals and continuances took place. Defendants were unconditionally released during this hiatus. On May 20, 1983, nearly six years after the indictment, the District Court dismissed the indictment on the ground that defendants' Sixth Amendment Rights had been violated. The Supreme Court reversed. 474 *U.S.* at 317, 106 *S.Ct.* at 657, 88 *L.Ed.*2d at 655.

Citing its prior holdings in *United States v. MacDonald*, 456 *U.S.* 1, 102 *S.Ct.* 1497, 71 *L.Ed.*2d 696 (1982) and *United States v. Marion*, 404 *U.S.* 307, 92 *S.Ct.* 455, 30 *L.Ed.*2d 468 (1971), the court identified the critical issues in assessing a speedy trial contention to be whether defendants were under indictment or subject to restraints on their liberty. Because the indictments had been dismissed during the appellate proceedings and because defendants were not incarcerated or subject to bail, the court concluded that no speedy trial violation occurred:

> As we stated in MacDonald: "with no charges outstanding, personal liberty is certainly not impaired to the same degree as it is after arrest while charges are pending. After the charges against him have been dismissed, 'a citizen suffers no restraints on his liberty and is [no longer] the subject of public accusation: his situation does not compare with that of a defendant who has been arrested and held to answer.'" [*Loud Hawk, supra*, 474 *U.S.* at 311, 106 *S.Ct.* at 654, 88 *L.Ed.*2d at 651–52 quoting 456 *U.S.* at 9, 102 *S.Ct.* at 1502, 71 *L.Ed.*2d at 704.]

Addressing the defendant's contention that the pendency of the prosecution alone was sufficient to invoke speedy trial protections, the court stated:

> Public suspicion, however, is not sufficient to justify the delay in favor of a defendant's speedy trial claim. We find that after the District Court dismissed the indictment against respondents and after respondents were freed without restraint, they were "in the same position as any other subject of a criminal investigation." *MacDonald, supra*, at 9, 102 *S.Ct.* at 1502. See *Marion, supra*, 404 *U.S.* at 309, 92 *S.Ct.* at 457. The Speedy Trial Clause does not purport to protect a defendant from all effects flowing from a delay before trial. The clause does not, for example, limit the length of a preindictment criminal investigation even though "the [suspect's] knowledge of an ongoing criminal investigation will cause stress, discomfort, and perhaps a certain disruption in normal life." [*Loud Hawk, supra*, 474 *U.S.* at 312, 106 *S.Ct.* at 654, 88 *L.Ed.*2d at 652, quoting 456 *U.S.* at 9, 102 *S.Ct.* at 1502, 71 *L.Ed.*2d at 704.]

Here, as in *Loud Hawk*, the charges against LeFurge were dismissed during the pendency of the appellate process. The fact that in *Loud Hawk*, the dismissal was prior to trial and here, it was after a jury conviction is of no moment. In neither case was defendant under bail or subject to a restraint on liberty. Thus, speedy trial principles may not be invoked by

LeFurge with respect to the period during which the charges were dismissed and he was free.

■ The State has advanced a separate contention in the defense of this appeal: that delays occasioned by the appellate process are not to be counted at all in calculating a denial of speedy trial claim. This is a significant issue and we choose to address it although our basic ruling makes it unnecessary for us to do so. In so doing, we again take our lead from *Loud Hawk* which rejected the view that appellate delay is not cognizable in the speedy trial framework and concluded that such delay should be evaluated against the traditional standards enunciated in *Barker v. Wingo*, 407 *U.S.* 514, 92 *S.Ct.* 2182, 33 *L.Ed.*2d 101 (1972) (and adopted by our Supreme Court in *State v. Szima*, 70 *N.J.* 196 (1976)). These standards are length of delay, reason for the delay, defendant's assertion of his right and prejudice. The court in *Loud Hawk* observed that:

> The Barker test furnishes the flexibility to take account of the competing concerns of orderly appellate review on the one hand, and a speedy trial on the other. We therefore adopt this functional test to determine the extent to which appellate time consumed in the review of pretrial motions should weigh towards a defendant's speedy trial claim. Under this test, we conclude that in this case the delays do not justify the "unsatisfactorily severe remedy of dismissal" in this case. [*Loud Hawk, supra,* 474 *U.S.* at 314, 106 *S.Ct.* at 655, 88 *L.Ed.*2d at 653 quoting 407 *U.S.* at 522, 92 *S.Ct.* at 2188, 33 *L.Ed.*2d at 112]

We think the application of these standards should resolve the tension between speedy trial protections and the interests served by appellate review in the post-conviction context as well. We thus apply them to evaluate LeFurge's claims as to the delay during the appellate process which led to the reinstatement of his conviction.

We begin with the fact that the delay of LeFurge's sentencing was three and óne-half years, long enough to be "presumptively prejudicial." *Barker, supra,* 407 *U.S.* at 530, 92 *S.Ct.* at 2192, 33 *L.Ed.*2d at 117. Although LeFurge contends that none of the delay was attributable to him, this is not the case. The State filed its Notice of Appeal on August 12, 1982, and

received a thirty-day extension to file a brief which was accomplished on March 7, 1983. LeFurge, however, did not file his appellate brief until over one year later on March 22, 1984. Similarly, although the State filed its Petition for Certification on July 19, 1984, LeFurge did not file his response until over six months later on January 29, 1985, well beyond the fifteen day time limit set in *R.*2:12–8. Thus, over one-and-a-half years of delay was due to the dilatory filing of LeFurge's papers. LeFurge has not suggested, even obliquely, any deliberate attempt by the government to delay the proceedings. Moreover, the State's appeals raised substantial issues on which it was ultimately successful.

The next factor to be considered in the *Barker* balancing test is the assertion by a defendant of his Sixth Amendment rights. LeFurge never asserted these rights during the appeal process after his conviction was dismissed. As the court in *Barker, supra* noted: "that failure to assert the right will make it difficult for a defendant to prove that he was denied a fair trial." 407 *U.S.* at 532, 92 *S.Ct.* at 2193, 33 *L.Ed.*2d at 118.

The final factor to be weighed is the prejudice to the defendant. In *Barker, supra,* the court identified the interests which should be considered to be protected by the speedy trial right including: 1) prevention of oppressive pretrial incarceration; 2) minimization of anxiety and concern of the accused; 3) limitation of the possibility that the defense will be impaired. 407 *U.S.* at 532, 92 *S.Ct.* at 2193, 33 *L.Ed.*2d at 118. Here, two of the three elements are entirely lacking. LeFurge was not deprived of his liberty during the period of appeal and, because he was convicted prior to the three and one-half year hiatus, he does not even claim that his defense was in any way impaired. LeFurge's sole claim involves the "hardship for the defendant of waiting almost four years to learn whether the State's appeal would be successful and, if so, what sentence would be imposed." This claim was specifically rejected in *Loud Hawk*

and, standing alone, is insufficient to constitute meaningful prejudice.

■ In sum, LeFurge's sentencing was held up for a lengthy period as a result of significant delays on his own part with no suggestion of purposeful stalling by the government. The appellate issues raised by the State were substantial and indeed resulted in the reinstatement of LeFurge's conviction. LeFurge never claimed a speedy trial right. His defense was not impaired and no cognizable prejudice to him resulted. Thus, it is clear that no Sixth Amendment right of LeFurge was violated.

To the extent that a due process claim may be implicated in LeFurge's contentions, the standard to be applied is whether the delay was "purposeful or oppressive" (*Pollard v. United States*, 352 *U.S.* 354, 361, 77 *S.Ct.* 481, 486, 1 *L.Ed.*2d 393, 399 (1957)). We think that what we have said in connection with LeFurge's Sixth Amendment argument sufficiently addresses these issues and lays to rest any due process claim.

Affirmed.