**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4055-17T3

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

v.

MARCELO G. MONTALVO,
ROBERTO R. GONZALEZ,
VIDAL M. SALMERON,
and CARLOS J. BRENES,

    Defendants-Respondents.

_____

Submitted January 31, 2019 – Decided February 15, 2019

Before Judges Simonelli and DeAlmeida.

On appeal from Superior Court of New Jersey, Law Division, Hudson County, Indictment No. 17-05-0091.

Gurbir S. Grewal, Attorney General, attorney for appellant (Kayla E. Rowe, Deputy Attorney General, of counsel and on the brief).

Proetta & Oliver, attorneys for respondent Vidal M. Salmeron; and Joel S. Silberman, attorney for respondents Marcelo G. Montalvo and Roberto R.

Gonzalez (William A. Proetta, and Joel S. Silberman, on the joint brief).

PER CURIAM

On July 16, 2012, the police arrested defendants Marcelo Montalvo, Roberto Gonzalez and Vidal Salmeron and charged them with possession of a controlled dangerous substance (CDS), possession of a CDS with intent to distribute, money laundering, and conspiracy. Defendants were released on bail. Four years and eleven months later, on May 26, 2017, a grand jury indicted defendants for second-degree conspiracy, N.J.S.A. 2C:5-2; first-degree possession with intent to distribute a CDS, N.J.S.A. 2C:35-5(a)(1), N.J.S.A. 2C:35-5(b)(1) and N.J.S.A. 2C:2-6; third-degree possession of a CDS, N.J.S.A. 2C:35-10(a)(1) and N.J.S.A. 2C:2-6; and second-degree money laundering, N.J.S.A. 2C:21-25(a).

On July 10, 2017, the trial court ordered plaintiff State of New Jersey to address several discovery deficiencies raised by the defense. The State subsequently informed the court that some of the requested material, specifically, motor vehicle recordings (MVRs) and radio transmissions of the State troopers who conducted the stop of a tractor trailer that led to defendants' arrest, no longer existed, due to the length of time that elapsed between the arrest and indictment.

On August 17, 2017, defendants filed a motion to dismiss the indictment with prejudice based on the violation of their right to a speedy trial. The State appeals from the April 30, 2018 Law Division order granting the motion. On appeal, the State raises the following contentions:

POINT I

THE VALID INDICTMENT THE TRIAL COURT IMPROPERLY DISMISSED THE INDICTMENT AGAINST DEFENDANTS MONTALVO, GONZALEZ, AND SALMERON.

A.   Standard for Evaluating a Motion to Dismiss an Indictment.

B.   Standard of Review.

C.   The Barker[1] factors balance in favor of reinstating the grand jury indictment.

    1.   The first Barker factor, the length of the delay, invites further analysis and weighs only slightly against the State.

    2.   The reason for the delay weighs in favor of maintaining the valid indictment against defendants.

    3.   Defendants' dilatory speedy trial challenge contributed to the delay.

    4.   No prejudice has accrued to the defendants as a result of the delay.

---

[1]  Barker v. Wingo, 407 U.S. 514 (1972).

3                                                                    A-4055-17T3

We reject these contentions and affirm.

The decision to dismiss an indictment lies within the discretion of the trial court and "will only be overturned upon a showing of a mistaken exercise of that discretion." State v. Lyons, 417 N.J. Super. 251, 258 (App. Div. 2010). The trial court's decision to dismiss an indictment should not be disturbed on appeal unless the court's discretion was "clearly abused." State v. Hogan, 144 N.J. 216, 229 (1996). "A trial court decision will constitute an abuse of discretion where 'the decision [was] made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" State v. Salter, 425 N.J. Super. 504, 514 (App. Div. 2012) (alteration in original) (quoting State v. Triestman, 416 N.J. Super. 195, 202 (App. Div. 2010)). Thus, the court's decision "will be reviewed only for manifest error and injustice." State v. Torres, 183 N.J. 554, 572 (2005) (quoting State v. Ravenell, 43 N.J. 171, 182 (1964)). Applying the above standards, we discern no reason to reverse.

"The Sixth Amendment protects a defendant's right to a speedy trial after arrest or indictment." State v. May, 362 N.J. Super. 572, 595 (App. Div. 2003) (quoting State v. Long, 119 N.J. 439, 469 (1990)). "The right to a speedy trial is 'fundamental' and is imposed by the Due Process Clause of the Fourteenth Amendment on the States." Barker, 407 U.S. at 515 (footnote omitted).

The four-part test to determine when a violation of a defendant's speedy-trial rights contravenes due process — announced in <u>Barker</u> and subsequently adopted by our Supreme Court in <u>State v. Szima</u>, 70 N.J. 196, 200-01 (1976) — requires "[c]ourts [to] consider and balance the '[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant.'" <u>State v. Tsetsekas</u>, 411 N.J. Super. 1, 8 (App. Div. 2009) (third alteration in original) (quoting <u>Barker</u>, 407 U.S. at 530). "No single factor is a necessary or sufficient condition to the finding of a deprivation of the right to a speedy trial." <u>Id.</u> at 10. Our Supreme Court has "decline[d] to adopt a rigid bright-line try-or-dismiss rule," instead continuing its commitment to a "case-by-case analysis" under the <u>Barker</u> balancing test; it has acknowledged "that facts of an individual case are the best indicators of whether a right to a speedy trial has been violated." <u>State v. Cahill</u>, 213 N.J. 253, 270-71 (2013).

<u>Length of Delay</u>

The first factor — length of delay — is a "triggering mechanism" and "[u]ntil there is some delay which is presumptively prejudicial, there is no necessity" for the court to balance the other factors. <u>Barker</u>, 407 U.S. at 530. "[T]he length of delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case." <u>Id.</u> at 530-31 (footnote omitted)

A-4055-17T3

(adding "the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge"). If a delay is found to be presumptively prejudicial, "such a delay will trigger consideration of the other factors." Cahill, 213 N.J. at 264.

Whether a delay is considered presumptively prejudicial "depends on the circumstances of the individual case, including the nature of the charged offense" and requires a consideration of the amount of time customarily required to dispose of similar charges. Id. at 264-65. Nevertheless, "most decisions have identified a period of one year or slightly more than one year as the time 'after which . . . it makes sense to inquire further into why the defendant has not been tried more promptly.'" Id. at 265 (quoting 5 Wayne R. LaFave et al., Criminal Procedure § 18.2(b) at 119 (3d ed. 2007)). "[O]nce the delay exceeds one year, it is appropriate to engage in the analysis of the remaining Barker factors." Id. at 266.

Here, the motion judge found the nearly five-year delay between defendants' arrest and indictment weighed in defendants' favor. The State concedes the length of delay triggered further analysis of the remaining Barker factors. However, the State argues the judge should have weighed this factor only slightly against it because defendants were indicted within the time period

6

set forth in N.J.S.A. 2C:1-6(b), which provides, "[a] prosecution for a crime must be commenced within five years after it is committed[.]"

The State cites no authority setting a statutory time period as the length of time fixing the point at which delay is excessive. To the contrary, the right to a speedy trial is "necessarily relative" and depends on the circumstances of each individual case. Barker, 407 U.S. at 522 (quoting Beavers v. Haubert, 198 U.S. 77, 87 (1905)). Although the Barker Court recognized that some legislatures and courts had identified a specific time after which a criminal charge would be subject to dismissal, it held there was no constitutional basis for requiring that the speedy trial right be so quantified. Id. at 523.

Our Supreme Court has "declined . . . to fix a date certain after which prejudice is presumed or the complaint or indictment must be dismissed, preferring instead to evaluate each claim of denial of a speedy trial on a case-by-case basis." Cahill, 213 N.J. at 269. We have held that, in evaluating a speedy trial claim, "[t]here is no set length of time that fixes the point at which delay is excessive." Tsetsekas, 411 N.J. Super. at 11. Accordingly, our courts do not view the right to a speedy trial in reference to any narrowly defined statutory time-period or procedural rules and, instead, have adopted the understanding that "the right to a speedy trial is relative and depends upon [the]

A-4055-17T3

circumstances." Szima, 70 N.J. at 200. This clearly contradicts the State's reliance on the statute of limitations. The statute of limitations is separate and distinct from a defendant's right to a speedy trial and there is no precedent to support a consideration of the statute of limitations in the speedy trial context. Thus, the judge correctly found the length of delay weighed in defendants' favor.

### Reason for the Delay

"Barker's second prong examines the length of a delay in light of the culpability of the parties." Tsetsekas, 411 N.J. Super. at 12. Trial courts, in reviewing "the chronology of the delay," should "divid[e] the time into discrete periods of delay" and attribute each delay to the State, the defendant or the judiciary. May, 362 N.J. Super. at 596 (affirming a trial court which examined the chronology of the case as discrete periods of delay). Thereafter, "different weights should be assigned to different reasons" proffered to justify a delay. Barker, 407 U.S. at 531. Purposeful delay tactics weigh heavily against the State. Tsetsekas, 411 N.J. Super. at 12. "A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." Barker, 407 U.S. at 531. "Delay caused or requested by the defendant is not

considered to weigh in favor of finding a speedy trial violation." State v. Farrell, 320 N.J. Super. 425, 446 (App. Div. 1999).

The State's reason for the delay in this case was that the Deputy Attorney General (DAG) originally assigned to the case left his position and his cases were reassigned to a new DAG. The new DAG checked the status of each reassigned case on PROMIS/Gavel, the court's system, where the matter was listed by the court as "closed." The DAG relied on this listing, regarded the case as closed, and therefore failed to take any action in the case until almost five years later when he discovered the information provided on PROMIS/Gavel had been inaccurate. The State argued that this was a valid reason for the delay because the DAG relied on information provided by the court, misunderstood the PROMIS/Gavel listing of the case as "closed," and initiated the indictment as soon as he realized the matter was not closed.

The judge disagreed, finding as follows:

> the state's only explanation for the delay is that when a new deputy attorney general was assigned to the case, the case was listed as closed in PROMIS/Gavel, which is the court system and, therefore, the case was regarded as closed for an extended period of time, that being years have gone by as opposed to making an immediate inquiry either with the [c]ourts, defense counsel or even your previous deputy attorney general who was assigned to this case.

9

The state appears to be passing the blame off to an unknown third party who is not responsible for prosecuting cases. It's their responsibility. Therefore, [the c]ourt finds that [the second] factor[] weigh[s] in favor of the defendants as the . . . state has failed to set forth a valid reason . . . for indicting defendant[s] nearly five years after [their] initial arrest.

Accordingly, the judge weighed the second factor in defendants' favor.

The State argues the judge should have weighed the second <u>Barker</u> factor in its favor because the reason for the delay was valid and quickly remedied, and the judge failed to consider the full circumstances and engage in a proper legal analysis of the reason for the delay.[2]

---

[2] The State also distinguishes this matter from <u>State v. Misurella</u>, 421 N.J. Super. 538 (App. Div. 2011) and <u>May</u>, where the delays were found to be neutral and were weighed only slightly against the State. Defendants also distinguish these cases and argue <u>Misurella</u> does not apply here because there, the defendant was asserting his right to a speedy "de novo" appeal, and the right to a speedy appeal is separate and distinct from the right to a speedy trial. Although they do so for different reasons, both parties agree the present case is distinguishable from <u>Misurella</u> and <u>May</u>. However, as to defendants' argument that <u>Misurella</u> is inapplicable, there, we clearly applied the <u>Barker</u> factors and noted "the same framework and standard apply to evaluating undue delay on appeal as applies to a defendant's right to a speedy trial in the trial court." <u>Misurella</u>, 421 N.J. Super. at 544. Thus, defendants' argument that the right to a speedy trial and the right to a speedy appeal "are not analogous" is unsupported and without merit. <u>Ibid.</u>; <u>see also</u> <u>State v. LeFurge</u>, 222 N.J. Super. 92, 98 (App. Div. 1988) (recognizing that appellate delays are evaluated under the speedy trial framework and "against the traditional standards enunciated in <u>Barker</u>").

A-4055-17T3

The court's erroneous listing of the case as "closed" on PROMIS/Gavel is not attributable to defendants, and does not constitute "[a] deliberate attempt [by the State] to delay the trial in order to hamper the defense[.]" Barker, 407 U.S. at 531. Nevertheless, "[a]s a general rule . . . delays of scheduling and other failures of the process for which the trial court itself was responsible are attributable to the State and not to the defendant." Farrell, 320 N.J. Super. at 451. Thus, although the State alleges the delay was caused by its reasonable reliance on the court's error, the error is nevertheless attributable to the State for purposes of this analysis.

Because the court's error largely caused the delay, it should be regarded as a "neutral" reason for the delay. Barker, 407 U.S. at 531. A neutral reason is weighed against the State, but "should be weighted less heavily" than if the State had deliberately caused the delay. Ibid. However, it should nevertheless be considered "since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." Ibid.; see also Farrell, 320 N.J. Super. at 451(delays attributed to the court itself should be weighed less heavily but nevertheless should be considered). Thus, the judge should have slightly weighed the reason for the delay against the State. This error, however, does not warrant reversal.

11

Defendant's Assertion of His Rights

In analyzing a defendant's assertion of speedy-trial rights, a court may consider "the frequency and force of the [defendant's] objections" when assessing whether the defendant properly invoked the right. Barker, 407 U.S. at 529. This third factor "is closely related to the other factors" and "is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." Id. at 531-32.

"The assertion of a right to a speedy trial is measured heavily in the speedy trial analysis." Cahill, 213 N.J. at 274. Although a defendant does not have an obligation to assert his right to a speedy trial, "'[w]hether and how a defendant asserts his right is closely related' to the length of the delay, the reason for the delay, and any prejudice suffered by the defendant." Id. at 266 (alteration in original) (quoting Barker, 407 U.S. at 531). "The defendant's assertion of his speedy trial right, then, is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." Barker, 407 U.S. at 531-32; see also Cahill, 213 N.J. at 266 ("the assertion of a right to a speedy trial . . . is a factor entitled to strong weight when determining whether the state has violated the right"). "[F]ailure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." Barker, 407 U.S. at 532.

A-4055-17T3

Here, the judge found the third factor weighed in defendants' favor because defendants were not obligated to bring themselves to trial and they filed their motion to dismiss three months after they were indicted. The State argues the judge should have heavily weighed this factor against defendants.

Although the judge correctly noted defendants are not obligated to bring themselves to trial, the judge erred in finding this factor weighed in their favor. Furthermore, although a defendant has no obligation to bring himself to trial, a defendant does have "some responsibility to assert a speedy trial claim" and "failure to assert the right would make it difficult for a defendant to prove that he was denied a speedy trial." Szima, 70 N.J. at 200; see Barker, 407 U.S. at 531-32. Thus, if a defendant fails to assert his right to a speedy trial, such failure will weigh against a determination that the right has been violated. See May, 362 N.J. Super. at 598 (where defendant waited a long time before asserting his speedy trial right, his failure to assert the right weighed "against any determination that the right was violated").

Defendants did not assert their right to a speedy trial prior to filing their motion to dismiss and did not inquire about the status of their charges at any time between their arrest on July 16, 2012 and their indictment on May 26, 2017. See State v. Fulford, 349 N.J. Super. 183, 193 (App. Div. 2002) (defendant never

inquired as to when he would be prosecuted or demanded a speedy trial). By weighing this factor in defendants' favor and relying solely on the fact that they had no obligation to assert their right, the judge engaged in a flawed and incomplete analysis of this factor, ignoring the fact that "[f]ailure to assert the right is a factor that must be considered in any analysis of an asserted speedy trial violation." Cahill, 213 N.J. at 274. Nevertheless, this error does not warrant reversal.

We have recognized "there is an obvious difference in the weight to be given to defendants' inaction prior to indictment and subsequent to indictment." State v. Merlino, 153 N.J. Super. 12, 17 (App. Div. 1977). We stated:

> Under New Jersey practice a dismissal of a criminal complaint has no finality for the benefit of a defendant, and may be followed by grand jury consideration and indictment. Hence, it appears inappropriate to assign much weight or significance to the failure of a defendant and his counsel to go through the abortive process of moving for a dismissal of a complaint prior to the return of an indictment.
>
> [Ibid.]

Where defendants move for dismissal "promptly after the return of the indictment . . . their right to a speedy trial should not hinge upon their failure to move prior thereto." Ibid. Thus, although the judge here should have considered defendants' failure to assert their right to a speedy trial, it is not a necessary

precondition to dismissal. Ibid. Thus, the judge should have weighed this factor only slightly against defendants.

Prejudice to the Defendant

The fourth prong of the Barker test considers the prejudice to a defendant caused by delay. Barker, 407 U.S. at 532. "[P]roof of actual trial prejudice is not 'a necessary condition precedent to the vindication of the speedy trial guarantee.'" Tsetsekas, 411 N.J. Super. at 13-14 (quoting Merlino, 153 N.J. Super. at 15). Rather,

> significant prejudice may also arise when the delay causes the loss of employment or other opportunities, humiliation, the anxiety in awaiting disposition of the pending charges, the drain in finances incurred for payment of counsel or expert witness fees and the "other costs and inconveniences far in excess of what would have been reasonable under more acceptable circumstances."
>
> [Id. at 13 (quoting Farrell, 320 N.J. Super. at 452).]

The impairment of an accused's defense is considered "the most serious since it [goes] to the question of fundamental fairness." Szima, 70 N.J. at 201. "[T]he inability of a defendant adequately to prepare his case skews the fairness of the entire system." Barker, 407 U.S. at 532.

It is undisputed that the delay in this case resulted in the loss or destruction of the MVRs and radio transmissions. During the stop, the troopers searched

15

the sleeping berth of the tractor-trailer and found suspected cocaine. Defendants asserted they needed the MVRs and radio transmissions to prove the stop was a ruse; however, the State conceded this fact.

The judge found the fourth factor weighed in defendants' favor, emphasizing the general anxiety to defendants and that the unavailability of the MVRs and radio transmissions potentially impaired their ability to defend against the present charges. The judge noted that Montalvo had also asserted personal prejudice because he previously worked in the education field and has been unable to seek or obtain a job in his respective field due to required background checks.

The State argues the judge should have weighed this factor in its favor because defendants have not suffered a great amount of prejudice, they failed to identify any particular prejudice, and their purported anxiety should neutrally impact the analysis because such anxiety is present in every case.

It is well-established that a defendant may be "disadvantaged by restraints on his liberty and by living under a cloud of anxiety, suspicion, and often hostility." Barker, 407 U.S. at 533. Furthermore, our courts have noted that "every unresolved case carries with it some measure of anxiety." Cahill, 213 N.J. at 274-75. "We must assume that any person who has had limited

involvement with the criminal justice system would experience some measure of anxiety by the existence of a pending and long-unresolved charge." Id. at 275.

Applying this understanding, the Court in Cahill found that the generalized anxiety to the defendant, as well as the defendant's self-imposed limitations on his employment options, caused the fourth factor to weigh in favor of dismissing the indictment.[3] Id. at 275-76. Similarly, in Merlino, 153 N.J. Super. at 15, we found that "[a]lthough there was no showing of tangible prejudice to defendants . . . the facts support the determination that the unusual period of delay, the absence of justifiable reasons and the anxiety and concern inherent in an unresolved criminal charge outweigh the absence of actual trial prejudice to defendants." We noted that "proof of such actual prejudice is not a necessary condition precedent to the vindication of the speedy trial guarantee." Ibid. Under this framework, is it clear that general anxiety caused by defendants'

---

[3] The defendant in Cahill outlined the employment choices he made in light of the impending suspension of his driver's license to support his claim that he had been prejudiced by the delay. The defendant asserted that he sought short-term employment "that did not require a driver's license or could be accessed by mass transportation or a ride from a friend." Cahill, 213 N.J. at 275. Although the Court recognized that these were "self-imposed limitations," it noted they nevertheless limited the defendant's employment options and therefore weighed in favor of a finding of personal prejudice. Id. at 275-76.

A-4055-17T3

pending charges and the limitations on Montalvo's employment opportunities, even if self-imposed, are sufficient for a finding of prejudice.

The State also argues defendants were not prejudiced by the unavailability of the MVRs and radio transmissions because neither party has access to this evidence. In evaluating the prejudice to defendants, the judge found that the unavailability of this discovery potentially impaired their ability to defend against the charges. Although this evidence is unavailable to the parties, the State conceded what defendants hoped to prove from it — that the stop was a ruse.

Defendants counter this point in a footnote, claiming the State's concession that the stop was a "ruse" addressed their request for the policies of State Police regarding directed stops, and the concession was not relevant to the recordings rendered unavailable. However, at oral argument, defendants conceded they intended to use the unavailable evidence to prove the stop was a ruse. Concessions made before the trial court foreclose a contrary argument on appeal. Ji v. Palmer, 333 N.J. Super. 451, 459 (App. Div. 2000). Thus, defendants cannot now assert that the State's concession was unrelated to the unavailable evidence. Because the State conceded the stop was a ruse, the unavailability of the evidence did not impair defendants' ability to defend.

Although defendants were deprived of the evidence, this was "in no way significant to the outcome" due to the State's concession. See Barker, 407 U.S. at 534.

The judge's finding of prejudice nevertheless does not constitute an abuse of discretion because a "demonstration of prejudice is not strictly limited to a 'lessened ability to defend on the merits.'" Farrell, 320 N.J. Super. at 446 (quoting State v. Smith, 131 N.J. Super. 354, 368 n.2 (App. Div. 1974)). "Prejudice can also be found from employment interruptions, public obloquy, anxieties concerning the continued and unresolved prosecution, the drain on finances, and the like." Id. at 452 (quoting Smith, 131 N.J. Super. at 368 n.2). The judge also found defendants suffered prejudice due to employment interruptions and anxieties concerning the unresolved prosecution. Thus, the judge properly weighed this factor in defendants' favor.

In sum, the judge considered the conduct of both the State and the defendants. Although the judge erred in her analysis of some of the Barker factors, she applied the correct standard for evaluating a motion to dismiss an indictment on speedy trial grounds, thoroughly reviewed the parties' arguments, and engaged in a detailed analysis of the relevant factors. As in Merlino,

> the judge below undertook the difficult task of
> balancing all the relevant factors relating to the

A-4055-17T3

respective interests of the State and the defendants, applied his subjective reactions to the particular circumstances and arrived at a just conclusion. Such a determination at the trial level should not be overturned unless clearly erroneous.

[Merlino, 153 N.J. Super. at 17 (citations omitted).]

We are satisfied the judge's dismissal of the indictment was not an abuse of discretion.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4055-17T3