**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0779-22

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

JASON DRIESSE,

    Defendant-Appellant.

_____

        Argued October 29, 2024 – Decided February 13, 2025

        Before Judges Sumners and Perez-Friscia.

        On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Indictment No. 16-08-0708.

        Robert C. Gottlieb (Robert C. Gottlieb & Associates, PLLC) of the New York bar, admitted pro hac vice, argued the cause for appellant (Paul B. Brickfield, PC, and Robert C. Gottlieb, attorneys; Paul B. Brickfield and Robert C. Gottlieb, of counsel and on the briefs).

        Timothy P. Kerrigan, Jr., Chief Assistant Prosecutor, argued the cause for respondent (Camelia M. Valdes, Passaic County Prosecutor, attorney; Timothy P. Kerrigan, Jr. of counsel and on the brief).

PER CURIAM

On May 3, 2016, defendant drove his friend S.S. (Stacy),[1] with whom he had prior sexual relations but was never involved in a committed relationship with, to an isolated wooded area of Long Pond Ironworks State Park. After they got out of the car, defendant directed her to write a suicide note and when she refused, he pulled out a gun. Defendant later claimed the gun was inoperable and he was recreating an episode from M*A*S*H, the popular television show from the early 1970s to early 1980s, where a doctor convinces a suicidal soldier to live by acting as if the doctor would shoot and kill the soldier. Believing Stacy was suicidal because of emotional issues related to her relationships with other individuals and her sexuality, defendant professed he was trying to instill in her a desire to live by showing her what it felt like to be close to dying. After Stacy refused to write the note, defendant took her home.

About three months later, on August 17, a grand jury charged defendant in a seven-count indictment with attempted murder, N.J.S.A. 2C:5-1(a)(1) and 2C:11-3(a)(1); fourth-degree aggravated assault with a firearm, N.J.S.A. 2C:12-1(b)(4); second-degree aggravated assault with intent to cause serious bodily

---

[1] We use initials and pseudonyms to protect the victim's identity. R. 1:38-3(c)(12).

A-0779-22

injury, N.J.S.A. 2C:12-1(b)(1); second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a)(1); second-degree unlawful possession of a weapon without a permit, N.J.S.A. 2C:39-5(b)(1); third-degree terroristic threats, N.J.S.A. 2C:12-3(b); and third-degree aggravated assault causing bodily injury with a deadly weapon, N.J.S.A. 2C:12-1(b)(2).

In October 2021, the motion judge denied defendant's motion to suppress evidence of a firearm and notebook found in his home during the execution of search warrant.

On February 7, 2022, defendant moved to dismiss the indictment for a violation of his right to a speedy trial. The motion judge denied the request on March 3, 2022.

Defendant's nine-day jury trial began on March 15, 2022, before a different judge than who ruled on defendant's suppression and speedy trial motions. Defendant was found guilty of unlawful possession of a weapon and terroristic threats but was acquitted of the remaining five charges.

About a month later, the prosecutor declined to waive mandatory minimum term of imprisonment for the unlawful possession of a weapon conviction under the Graves Act, N.J.S.A. 2C:43-6.2. The Criminal Division presiding judge denied the appeal. The trial judge sentenced defendant to a

Graves sentence of five years in prison for unlawful possession of a weapon with forty-two months of parole ineligibility, along with a concurrent four-year prison term for terroristic threat. Defendant appeals, arguing:

> POINT I
>
> THE PASSAGE OF 2,132 DAYS FROM ARREST TO TRIAL VIOLATED [DEFENDANT'S] CONSTITUTIONAL RIGHT TO A SPEEDY TRIAL.
>
> POINT II
>
> THE TRIAL COURT'S DECISION TO IMPOSE THE GRAVES ACT WAS AN ABUSE OF DISCRETION.
>
> POINT III
>
> THE SENTENCING JUDGE IMPROPERLY WEIGHED AGGRAVATING AND MITIGATING FACTORS.
>
> POINT IV
>
> THE TRIAL COURT ERRED IN FINDING THAT THERE WAS PROBABLE CAUSE TO SEARCH [DEFENDANT'S] RESIDENCE FOR FIREARMS BECAUSE IT LACKED SUFFICIENT INFORMATION FOR SUCH A DETERMINATION.

Having considered the parties' arguments and applicable law, we affirm the convictions and sentence but remand to the trial judge for the limited purpose of amending the judgment of conviction (JOC).

A-0779-22

I.

Speedy Trial

We first address defendant's speedy trial claim. Based on the four-factor balancing test proclaimed in Barker v. Wingo, 407 U.S. 514, 527 (1972), as adopted by our State in State v. Szima, 70 N.J. 196, 200-01 (1976), defendant contends the motion judge erred in denying his motion to dismiss the indictment due to lack of a speedy trial because "2,103 days"[2] passed from his arrest on May 6, 2016 to the filing of his speedy trial motion on February 7, 2022.

"The Sixth Amendment protects a defendant's right to a speedy trial after arrest or indictment." State v. May, 362 N.J. Super. 572, 595 (App. Div. 2003) (quoting State v. Long, 119 N.J. 439, 469 (1990)). The Barker four-factor test must be applied to determine when a violation of a defendant's right to a speedy trial contravenes due process. The Barker test focuses on: (1) the length of the delay before trial; (2) the reason for the delay and, specifically, whether the government or the defendant is more to blame; (3) the extent to which the defendant asserted his speedy trial right; and (4) the prejudice to the defendant. 407 U.S. at 530-31.

---

[2]  It was actually 2,106 days.

A judge applying the Barker test must balance the four factors, State v. Tsetsekas, 411 N.J. Super. 1, 8 (App. Div. 2009), based on a "case-by-case analysis" because the "facts of an individual case are the best indicators of whether a right to a speedy trial has been violated," State v. Cahill, 213 N.J. 253, 270-71 (2013). "But the question of how long is too long" for a trial to be delayed "'cannot be answered by sole reference to the lapse of a specified amount of time.'" State v. Detrick, 192 N.J. Super. 424, 426 (App. Div. 1983) (quoting State v. Smith, 131 N.J. Super. 354, 360, aff'd, 70 N.J. 213 (1976)). Legitimate delays, "however great," will not violate the defendant's right to a speedy trial if it does not specifically prejudice the defendant's defense. Doggett v. United States, 505 US. 647, 656 (1992). Furthermore, it is well established that longer delays may "be tolerated for serious offenses or complex prosecutions." Cahill, 213 N.J. at 265. Moreover, it bears emphasis that "[a]ny delay that defendant caused or requested would not weigh in favor of finding a speedy trial violation." State v. Gallegan, 117 N.J. 345, 355 (1989). "The only remedy" for a violation of a defendant's right to a speedy trial "is dismissal of the charge." Cahill, 213 N.J. at 276.

For this appeal, we afford deference to the motion judge's findings as to the assessment and balancing of the Barker factors. State v. Fulford, 349 N.J.

Super. 183, 195-96 (App. Div. 2002). "[W]e reverse only if the [trial] court's determination is clearly erroneous." Tsetsekas, 411 N.J. Super. at 10 (citing State v. Merlino, 153 N.J. Super. 12, 17 (App. Div. 1977)). "[N]otwithstanding our de novo review of [a] defendant's speedy trial claims," we "review the decision of the trial court, not to decide the motion tabula rasa." State v. Reyes-Rodriguez, ___ N.J. Super ___ (App. Div. 2025) (slip op. at 16) (quoting Est. of Doerfler v. Fed. Ins. Co., 454 N.J. Super. 298, 302 (App. Div. 2018)).

Guided by these principles, we are satisfied the motion judge, who was not the trial judge, properly applied the Barker factors in its bench opinion and found defendant's rights to a speedy trial were not violated.

Beginning with Barker's first factor, the length of the trial's delay, it weighs heavily in favor of defendant. Defendant waited nearly six years to go to trial; he was indicted on August 17, 2016, and his trial started March 15, 2022. Thus, we agree with the motion judge's determination there "is no question . . . the length of time between the indictment and the trial date of this matter . . . is an inordinate amount of time" that "has triggered a serious consideration of the other [three Barker] factors."

Turning to Barker's second factor, the reason for the trial's delay and who is to blame, it could not be held against the State nor the court. The motion

judge determined "that at least two years, if not more, of the delay was due to [the] COVID-19" pandemic, which "cannot be held against the State or the [c]ourt." The judge also noted defendant's first counsel became seriously ill at the beginning of the pandemic and when the vicinage began having jury trials again in June 2021, preference was given to cases involving detained defendants — which did not include defendant who posted a bond and wore a GPS ankle monitor. And when defendant's trial was scheduled to start in January 2022, his new defense counsel became infected with COVID-19, thereby delaying the trial. Thereafter, defendant filed his speedy trial motion. The judge thus determined there was no speedy trial violation to warrant dismissal of the indictment because there was a reasonable explanation for the trial being delayed. See Barker, 407 U.S. at 453.

The parties dispute whether defendant's first counsel was ready for trial in September 2019 before the pandemic took effect and whether new counsel was ready for trial when new counsel was substituted on March 27, 2021 or June 18, 2021. There, however, is no dispute that the trial was significantly delayed due to the pandemic and priority was given to jury trials involving detained defendants. We thus see no reason to disagree with the motion judge's credible factual findings that the State did not cause the delays and under the

8

circumstances there were reasonable explanations for the delay in starting defendant's trial.

The third Barker factor, defendant's responsibility to assert the speedy trial right, see Szima, 70 N.J. at 201, weighs against defendant. The motion judge recognized that defendant asserted his right but waited until "the eve of trial" to make the motion, as a "defense tactic." Moreover, defendant filed his speedy trial motion about five years and six months after his indictment.

Finally, the fourth Barker factor, whether the delay prejudiced defendant, also weighs against defendant. He contends he was prejudiced because he: (1) "paid a total of $11,340[] for his GPS monitor during the pendency of this case;" (2) "was dismissed from three jobs when . . . his GPS ankle bracelet malfunctioned and sounded an alarm while he was working," which caused feelings of embarrassment and being incarcerated while wearing the GPS ankle bracelet; (3) had to transfer colleges; and (4) could not "be represented at trial by the attorney of his choice."

The motion judge rejected these assertions. The judge acknowledged defendant faced employment "issues" and "anxiety" while awaiting trial but found them unpersuasive considering there are detained defendants "facing the same" or "more serious charge[s]" while defendant proceeded to trial. The judge

was unconvinced, finding defendant did not assert the trial delay resulted in "losing a witness," the "destruction of exculpatory evidence," nor compromised his discovery. The judge further noted that by not being detained, defendant was able to freely prepare his defense with counsel without the restrictions and lesser conditions of a detained defendant. We see no reason to disagree as the judge's ruling is consistent with our prior considerations of this factor.

In State v. Le Furge, we held the interests "protected by the speedy trial right" include "1) prevention of oppressive pretrial incarceration; 2) minimization of anxiety and concern of the accused; [and] 3) limitation of the possibility that the defense will be impaired." 222 N.J. Super. 92, 99 (App. Div. 1988) (citing Barker, 407 U.S. at 532). In considering the prejudice to a defendant by having an unreasonable trial delay, the court generally looks to "prejudice affecting defendant's liberty interest or . . . ability to defend on the merits." Tsetsekas, 411 N.J. Super. at 13. Yet, other "significant prejudic[ial]" factors are considered, such as

> when the delay causes the loss of employment or other opportunities, humiliation, the anxiety in awaiting disposition of the pending charges, the drain in finances incurred for payment of counsel or expert witness fees and the "other costs and inconveniences far in excess of what would have been reasonable under more acceptable circumstances."

A-0779-22

> [Ibid. (quoting State v. Farrell, 320 N.J. Super. 425, 452
> (App. Div. 1999)).]

On balance, we see defendant's situation like that in Le Furge where we rejected the detained defendant's claim of prejudice, which "sole[ly] . . . involve[d] the 'hardship for the defendant of waiting almost four years to learn whether the State's appeal would be successful and, if so, what sentence would be imposed.'" 222 N.J. Super. at 99. Such hardships, standing alone, are insufficient to demonstrate prejudice. Id. at 99-100. As the motion judge correctly recognized, defendant was not detained and did not claim impairment to his defense. The only prejudice he suffered was due to his change in counsel and the costs and difficulties imposed by his GPS ankle monitor. Yet, the record supported the judge's finding that defendant knew there was no guarantee his first counsel could represent him in the first instance, yet he waited to find new counsel. Moreover, defendant's posting of a bond and use of a GPS ankle monitor allowed him to remain free during the COVID-19 pandemic and, as the motion judge noted, afforded him luxuries unavailable to other defendants awaiting trial.

In sum, without question, the delay in adjudicating this case was much too long. Yet, except for pre-trial anxiety and stress, considering the valid reasons for most of the trial date adjournments, defendant's failure to promptly file his

A-0779-22

motion for a speedy trial, and the lack of prejudice to his defense at trial, the facts militate against dismissal of this case.  The balancing of the four <u>Barker</u> factors leads us to agree with the motion judge that there was no violation of defendant's right to a speedy trial.

II.

Search Warrant Probable Cause

We next address defendant's argument that the motion judge, who also decided the speedy trial motion, erred in finding the police had probable cause to search his home pursuant to a search warrant based on a New Jersey State Park Police detective's probable cause affidavit reciting Stacy's account of the incident.  Defendant contends the judge erroneously determined probable cause existed to issue the search warrant because there was insufficient evidence showing that a gun "could conceivably" be in his home and its whereabouts. Defendant also contends the judge erred in allowing the seizure of a notebook considering the probable cause affidavit did not mention the notebook.

Search warrants are presumed valid.  <u>State v. Missak</u>, 476 N.J. Super. 302, 317 (App. Div. 2023) (citing <u>State v. Bivins</u>, 226 N.J. 1, 11 (2016)).  Our deference to the trial court's issuance of a search warrant exists where "the adequacy of the facts offered to show probable cause . . . appears to be

marginal." Ibid. (alteration in the original) (quoting State v. Kasabucki, 52 N.J. 110, 116 (1968)). The warrant must be based on the probable cause "to believe evidence of a crime will be found at a particular place." Facebook, Inc. v. State, 254 N.J. 329, 340 (2023). "Great protection applies especially in one's home, the sanctity of which 'is among our most cherished rights.'" State v. Boone, 232 N.J. 417, 426 (2017) (quoting State v. Bryant, 227 N.J. 60, 69 (2016)).

Our review of the record demonstrates the State's warrant application was based on adequate facts indicating defendant's involvement in criminal activity. Defendant failed to surmount his "burden of proof to establish a lack of probable cause 'or that the search was otherwise unreasonable.'" Boone, 232 N.J. at 427 (quoting State v. Watts, 223 N.J. 503, 513-14 (2015)). The detective's affidavit in the warrant application recited Stacy's account that defendant: drove them to his house and, while she waited in the car, he went inside before returning about ten minutes later with unknown objects that he placed in his car trunk; drove to the woods in Long Pond Ironworks State Park; showed her a notebook and gun; she dropped the notebook after he pulled the gun's trigger; and he then drove Stacy home without stopping.

The affidavit recited that after she told her parents what happened and they advised her to get proof of the incident, she texted defendant after he left

her house to get proof. The affidavit continued that in response to Stacy's text about the trauma defendant inflicted on her, including putting "a gun to [her] head," defendant acknowledged that "I'm going to have a hard time explaining it. I want to explain it all to you. It was wrong. It was really really really wrong."

In denying the motion, the judge determined

> there was sufficient probable cause supplied by the affiant in the search warrant affidavit . . . that a weapon could conceivably be found . . . based upon the statement that at the very least we know that the notebook was taken from the scene, that [defendant] stopped at his home before they went to the woods, and he placed something in his trunk.
>
> Based on that information, the victim's statement, and the defendant's admission, at least in the text messages, this [c]ourt finds that there was sufficient probable cause within the four corners of the affidavit . . . .

We concur with the judge. It was reasonable for the judge to believe that evidence of the offense — the notebook and gun — detailed in the detective's affidavit, could be found in defendant's home. Indeed, there is no basis for defendant's claim that the "affidavit is completely silent" regarding the notebook. The police had "more than mere naked suspicion" to think he kept the evidence somewhere in his home or car. State v. Gathers, 234 N.J. 208, 220

14

(2018) (quoting <u>State v. Keyes</u>, 184 N.J. 541, 553 (2005)). Nothing short of common sense supported probable cause for the search warrant. <u>See</u> <u>id.</u> at 221.

III.

<u>Graves Act Waiver</u>

Defendant argues the prosecutor and the presiding judge abused their discretion by declining to grant him a Graves Act waiver. He contends the Graves Act "is intended for people who actually attempt or commit acts of violence." He maintains he should have received a waiver because he has no prior "contacts with law enforcement," completed his college studies, was employed while the trial was pending, has no history of substance abuse, presented several character witnesses at sentencing, did not intend to harm Stacy, and did not possess a firearm capable of firing at the time of the offense.

"The [Graves] Act makes the use or possession of a firearm during the commission, attempted commission, or flight from the commission of certain designated offenses a sentencing factor that triggers the imposition of a mandatory term of imprisonment." <u>State v. Benjamin</u>, 228 N.J. 358, 367 (2017) (alteration in original) (quoting <u>State v. Franklin</u>, 184 N.J. 516, 529 (2005)). A defendant convicted of certain offenses involving firearms must receive a minimum sentence of five years in prison with a minimum forty-two months'

15

parole ineligibility.  N.J.S.A. 2C:43-6(c).  The purpose of the Graves Act is "to deter individuals from committing firearm-related crimes by calling for a mandatory minimum term of imprisonment for those convicted of Graves Act offenses."  Id. at 368 (citing State v. Des Marets, 92 N.J. 62, 71 (1983)).

The Graves Act, however, includes "a limited exception that allows certain first-time offenders to receive a reduced penalty if the imposition of a mandatory term would not serve the interests of justice."  Ibid.  This exception states:

> On a motion by the prosecutor made to the assignment judge that the imposition of a mandatory minimum term of imprisonment under (a) subsection c. of N.J.S.[A.] 2C:43-6 for a defendant who has not previously been convicted of an offense under that subsection, or (b) subsection e. of N.J.S.[A.] 2C:39-10 for a defendant who has not previously been convicted of an offense under chapter 39 of Title 2C of the New Jersey Statutes, does not serve the interests of justice, the assignment judge shall place the defendant on probation pursuant to paragraph (2) of subsection b. of N.J.S.[A.] 2C:43-2 or reduce to one year the mandatory minimum term of imprisonment during which the defendant will be ineligible for parole.  The sentencing court may also refer a case of a defendant who has not previously been convicted of an offense under that subsection to the assignment judge, with the approval of the prosecutor, if the sentencing court believes that the interests of justice would not be served by the imposition of a mandatory minimum term.
>
> [N.J.S.A. 2C:43-6.2.]

16

A prosecutor's discretion to recommend a Graves Act waiver to the trial court is guided by an Attorney General Directive. Attorney General's Directive to Ensure Uniform Enforcement of the "Graves Act" (Oct. 23, 2008, as corrected Nov. 25, 2008). The Directive requires prosecutors to "consider all relevant circumstances concerning the offense conduct and the offender, including those aggravating and mitigating circumstances set forth in N.J.S.A. 2C:44-1," and provides that the prosecutor "may also take into account the likelihood of obtaining a conviction at trial." Ibid. In deciding whether to move for a lesser sentence, the prosecutor must follow the Directive and, if a defendant's request for such a motion is denied, provide a particularized statement of reasons for the denial. Benjamin, 228 N.J. at 361. The prosecutor has the discretion to grant a waiver and may even deny it to a defendant the trial court finds deserving of leniency. State v. Rodriguez, 466 N.J. Super. 71, 125 (App. Div. 2021). Only if a defendant shows that the prosecutor's decision was a patent and gross abuse discretion should it be overturned. See Benjamin, 228 N.J. at 364 (permitting a "defendant[] to appeal the denial of a waiver to the assignment judge upon a showing of patent and gross abuse of discretion by the prosecutor").

There is no dispute that defendant's conviction of unlawful possession of a weapon exposed him to a mandatory minimum sentence of "one-half of the

sentence imposed by the court or [forty-two] months, whichever is greater."

N.J.S.A. 2C:43-6(c). Defendant's claim that he did not possess a gun capable of

firing is without merit given the jury found him guilty of unlawful possession of

a weapon. The prosecutor declined to grant a Graves Act waiver, finding

defendant inflicted serious harm on Stacy and further noted:

> The State . . . has reviewed all the mitigating factors submitted by your office. Specifically, the State has reviewed Exhibit A ([defendant's expert r]eport) as well as Exhibit B, which encompassed roughly one-hundred and twenty-two letters submitted on behalf of [defendant]. These letters that the State reviewed were from immediate family, extended family, friends, congregation members, clergy, and employers. . . .
>
> [T]he State is not extending a Graves [w]aiver in this matter for the following reasons. The jury in this case returned a verdict against [defendant] for [u]nlawful [p]ossession of a [w]eapon as well as [t]erroristic [t]hreat. . . . [T]he jury did not find [defendant's] version of events credible. The jury found that he did possess a firearm, not a part of a firearm, and that he did threaten to kill [Stacy].
>
> It should be noted that throughout this proceeding from its inception that [Stacy] had to endure emotional consternation because of [defendant's] actions. [Stacy] was required to come to court and testify in this proceeding which was broadcast on the internet due to COVID-19, about facts and circumstances not only surrounding the events of the day, but also her background. This testimony included topics such as her sexual orientation and experiences as well as mental health struggles. [Stacy] also had to endure the

emotional trauma from the event itself. She testified at trial about the events and testified to the jurors how she believed she was going to die. She testified that she was preparing to meet God and believed that May 3, 2016, would be her last day on Earth. It is the position of the State, that these events do not make this case one in which a Graves [w]aiver is appropriate.

The presiding judge found the prosecutor's denial of the waiver was not "used to punish . . . defendant . . . because he is exercising his constitutional right to a jury trial" and was consistent in seeking the Graves Act's mandatory minimum sentence throughout this matter. The judge rejected defendant's challenge to the prosecutor's denial, finding "the State provided adequate and enough balance and justification for the factors in its ultimate denial of this Graves Act application" such that it was not an abuse of discretion. The judge agreed with the prosecutor's application of aggravating factors: one, "[t]he nature and circumstances of the offense[s] . . . including whether or not it was committed in an especially heinous, cruel, or depraved manner"; two, "[t]he gravity and seriousness of harm inflicted on the victim"; and nine,"[t]he need for deterring the defendant and others from violating the law." N.J.S.A. 2C:44-1(a)(1), (2), and (9). The judge applied mitigating factors: seven, defendant lacks a "history of prior delinquency or criminal activity"; eight, "conduct was the result of circumstances unlikely to recur"; nine, "unlikely to commit another

19

offense"; and fourteen, "defendant was under 26 years of age at the time of the commission of the offense."  N.J.S.A. 2C:44-1(b)(7), (8), (9), and (14).  In finding the prosecutor did not abuse their discretion, the judge determined that when

> balanc[ing] these aggravating and mitigating factors for the purpose of the Alvarez[3] motion and considering the factors that the State considered, including the nature of the offense, the facts surrounding the circumstances of the case, the needs and the interest of the society, and the harm to the victim, all of those, when I consider those factors, the [c]ourt is satisfied that the State provided adequate and enough balance and justification for the factors in its ultimate denial of this Graves Act application.

We have no issue with the presiding judge's decision not to overturn the prosecutor's decision in denying defendant a Graves Act waiver.  Based on the credible evidence in the record and the prosecutor's reasoning, the judge properly determined there was no patent and gross abuse of discretion by the prosecutor.  Defendant has not articulated any argument to make us think otherwise.

---

3  State v. Alvarez, 246 N.J. Super. 137, 146-47 (App. Div. 1991), which recognized a defendant can make a motion appealing the denial of Graves Act waiver.

## IV.

## Application of Sentencing Factors

Finally, we address defendant's assertion that the trial judge improperly weighed the sentencing factors, which he found in equipoise. The judge applied aggravating factors one, three and nine. Defendant contends the judge improperly applied aggravating factors three and nine. The judge applied mitigating factors seven and fourteen. Defendant also argues the judge should have honored his request to apply mitigating factors: two, "defendant did not contemplate that the . . . conduct would cause or threaten serious harm"; eight; nine; and ten, "defendant is particularly likely to respond affirmatively to probationary treatment." N.J.S.A. 2C:44-1(b) (2), (8), (9), and (10).

Assessing the trial judge's application of aggravating factors, we agree in part with defendant's contentions. He is correct that in applying aggravating factor three the judge did not consider defendant as an individual, but incorrectly rested his consideration on normative statements about crime, and also rejected defendant's expert opinion by finding defendant was a risk to commit another crime. See State v. Coviello, 252 N.J. 539, 553 (2023) (holding "sentencing judges must carefully consider both the nature of the proven offenses and the individual characteristics of each offender"). The judge stated defendant is "not

. . . [a] risk of harm to himself or others in the community at the present time," but "there's always a risk that the defendant will commit another offense. Although it may not be a high risk, there is always the risk."  There was nothing in defendant's history indicating he might commit another crime.  See State v. Locane, 454 N.J. Super. 98, 125 (App. Div. 2018) (quoting State v. Thomas, 188 N.J. 137, 153 (2006)) (sentencing should "include an evaluation and judgment about the individual in light of his or her history").  The judge did not cite any credible evidence in the record to support his finding of aggravating factor three. See State v. Case, 220 N.J. 49, 65 (2014) (ruling appellate review must affirm a sentence supported by credible evidence in the record).  Moreover, in applying mitigating factor seven, that defendant has no criminal history, and aggravating factor three, the judge did not "explain how [he] reconcile[d] those two findings" nor "explain in greater detail its assessment of the weight assigned to each aggravating and mitigating factor, and its balancing of those statutory factors as they apply to defendant."  State v. Fuentes, 217 N.J. 57, 81 (2014).

We disagree with defendant that the trial judge should not have applied aggravating factor nine.  In pertinent part, the judge reasoned the factor applied because there was "[a] strong need to deter others from acting in the same manner with regards to what was presented in court at trial as to this offense that

the jury had found [defendant] guilty of." While defendant's abusive conduct was tied to his relationship with Stacy and he was law-abiding in the four years between his arrest and trial, application of aggravating factor nine was supported by credible evidence in the record of the depravity of his conduct and the harm he inflicted. Defendant's convictions for second-degree unlawful possession of a weapon justifies application of the aggravating factor to deter him and others from using gun as means to coerce or influence another person. See e.g., State v. Carey, 168 N.J. 413, 426 (2001) (citing State v. Megargel, 143 N.J. 484, 500 (1996)) (recognizing "[t]he need for public safety and deterrence increase proportionally with the degree of the offense").

Turning to the mitigating factors, defendant's contention that the judge should have applied factors two, eight, nine, and ten has merit. At sentencing, the judge recognized the offense occurred over six years earlier and defendant cooperated with his pretrial detainment conditions, found employment, presented an expert opining he was not a risk to himself and others, and had family, friends, and fellow church members profess to his fine character. These all indicate defendant's conduct is unlikely to recur (mitigating factor eight), he is unlikely to recommit (mitigating factor nine), and defendant would benefit

23

from probation (mitigating factor ten). Yet, the judge did not indicate why these factors did not apply.

Defendant's claim, however, that mitigating factor two should have been applied is not evident in the record. It is difficult, if not impossible, to believe defendant's conduct was not contemplated to cause serious harm to Stacy: he took her to the woods, held a gun to her head, and demanded that she kill herself, and if she did not, he would kill her. Thus, there was no reason to question why the judge rejected application of mitigating factor two.

Although we conclude the trial judge should not have applied aggravating factor three, and should have explained why mitigating factors eight, nine, and ten were not applied, we dismiss defendant's request for resentencing. He was sentenced to the minimum prison term under the Graves Act for second-degree unlawful possession of a weapon without a permit. And the concurrent four-year prison term for third-degree terroristic threats is supported by the record and is within our sentencing guidelines. See State v. Bolvito, 217 N.J. 221, 228 (2014) (alteration in original) (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)) (affirming a sentence on appellate review unless "(1) the sentencing guidelines were violated; (2) the findings of aggravating and mitigating factors were not 'based upon competent credible evidence in the record;' or (3) 'the

24

application of the guidelines to the facts' of the case 'shock[s] the judicial conscience.'"). Thus, it would be superfluous to vacate defendant's sentence and remand for resentencing because there is no reasonable basis to conclude he would receive a lighter sentence given his offenses. Nevertheless, we remand to the trial judge for the limited purpose of removing the application of aggravating factor three from the JOC.

To the extent we have not addressed any of defendant's remaining arguments, we conclude they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed in part and remanded in part.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0779-22